JOHN BALDWIN, JR. *et al.*

*v.*

WINNIE J. SAGER.

| 70    503
,100a  ¹641

1. MORTGAGE—*what is a satisfaction of, as to subsequent purchaser.* Where a junior mortgage was assigned by a deed absolute on its face, though, in fact, as a security for the payment of money, to one who afterwards purchased the equity of redemption from the mortgagor, and also purchased the land at a sale under a senior mortgage, and then sold to a third party, without notice of the private agreement between the assignor and assignee of the junior mortgage, such purchaser took the absolute title, discharged of any claim under either of the mortgages.

2. LIEN — *subsequent purchasers, how affected by.* Where a party purchases property upon which there is a lien, of which he has no notice, and pays all the purchase money, he will hold it, discharged of such lien.

3. SAME—*notice of, to purchasers, after purchase and before payment.* If a party purchases property without notice of any lien or incumbrance thereon, but, before paying for the same, he is notified of such lien, the same can be enforced as against him.

4. SAME—*where purchaser is notified of, after part payment.* If a party purchase land for full value, without notice of any lien, and pays a part of the purchase money, and, before paying the balance, is notified of such lien, the same can be enforced to the extent of the unpaid purchase money, if the notes given therefor have not been negotiated.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. GRANT & SWIFT, for the appellant Baldwin.

Messrs. HITCHCOCK & DUPEE, for the appellant Company.

Messrs. COOPER, GARNETT & PACKARD, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

In March, 1872, appellee filed his bill to establish a mortgage, which had been executed by A. G. Morey and wife to Daniel Sager, on certain real estate owned by the Chicago City Railway Company, or that Baldwin should pay the balance due complainant as a pledgee of the mortgage.

It appears that, in August, 1867, one George A. S. Crooker owned the premises in question, and, at that time, executed a trust deed to George R. Clarke, to secure two promissory notes for $1333.32, which were payable to T. S. Dobbins. This deed was recorded December 19, 1867. By several *mesne* conveyances, the title of Crooker passed, subject to this mortgage, to Albert G. Morey, by a deed from Marcus Walker, dated the 20th of January, 1869, which was recorded the 3d of February, 1869, and Morey assumed the payment of the notes secured by the trust deed to Clarke.

On the 1st of February, 1869, Morey executed a mortgage to Daniel Sager, for $4000, which was afterwards assigned to complainant, and by him to appellant Baldwin, by a deed absolute in form, which was duly recorded; and on the 8th

day of October, 1870, Morey conveyed the equity of redemption to Baldwin, and that deed was recorded on the same day. On the 15th day of the same month, Clarke sold the premises, under the power in the trust deed, to Baldwin. In December following, Baldwin conveyed to the railway company, by a deed delivered at that time, but bearing date in the previous October.

From these facts, it appeared that Baldwin was the holder of the legal title, absolute and free from these various mortgages. Such was the record, and such the apparent title upon which all persons not being charged with other notice could most assuredly rely; but it was claimed in the court below, and it so held, that Sager had, in fact, only pledged the lien he held, as second mortgagee, to Baldwin, to secure a debt the latter held against the former; that the deed by which he assigned it, although absolute on its face, was, in fact, only transferred as a pledge to secure the payment of $2000 he had borrowed of Baldwin, and that neither the sale by Clarke, under the prior deed of trust, to Baldwin, nor his sale to the railway company, deprived him of his right to enforce payment of the Morey mortgage; and the court below decreed that the Morey mortgage was not satisfied, but was a subsisting lien on the premises, and ordered the payment of $2214.53 in twenty days, and if not paid, that the master sell the premises.

We have been referred to no evidence, nor have we found any in the record, that the railway company had any other notice than such as the record discloses; and there can not be the slightest doubt that, if the company had paid all instead of but one-half of the purchase money before this bill was filed, they would hold the title, free from all incumbrances; but it is urged, that, inasmuch as the purchase money was not all paid, they hold subject to any lien that is disclosed by complainant's bill; and on this question, we are referred to the cases of *Brown* v. *Welch*, 18 Ill. 343, and *Mosier* v. *Knox College*, 32 Ill. 155. In the former of these

cases, it was said that a subsequent purchaser must have received a deed and paid the purchase money before he receives notice, to be entitled to protection as a *bona fide* purchaser; but it will be observed that the answer in that case did not set up or claim that any portion of the purchase money had been paid. In such a case, there can be no question as to the rule contended for, as, to postpone such a purchaser to a prior equity could not injure him in the slightest degree. The prior equity in such a case can be enforced without doing any wrong to the subsequent purchaser, as, if he remove the incumbrance, he may set up the amount paid against the payment of so much of the purchase money, or he may rescind the contract and avoid the payment.

In the latter of these cases, the subsequent purchaser took with notice from the record, and, although he executed his note for the purchase money, it was with notice, and there was no right to invoke the protection of a court of equity. He purchased and gave his note in his own folly, unless he expected to redeem from the prior mortgage; but in this case, the railway company, before there can be any pretense of notice to them of appellee's claim, had received a deed of conveyance for the premises; had paid $2860, being one-half of the purchase money, and had given their negotiable notes for the balance. This, then, presents a different case from either of those to which reference has been made.

The question is, shall appellee be permitted to make a transfer of his mortgage, absolute and unconditional in form, which is recorded and relied upon by a purchaser, as extinguishing his claim and lien upon the land—be permitted to subsequently set up a secret understanding that his transfer was only a pledge—and thus deprive the purchaser of his payment on the purchase? And may he thus assert his rights, against the purchaser, for the balance, although he may have given his negotiable notes, which may have been assigned, and the purchaser be compelled to pay them, and thus lose both the purchase money and the land? The English cases seem

to hold that he may, but in this country the current of the authorities does not hold the rule in so broad a sense. The doctrine seems to be well settled that, although the purchase money may not be paid at the time the vendee receives a conveyance, still it will be sufficient if it be paid before notice. *Warner* v. *Winslow*, 1 Sanfd. Ch. 430. But it has been repeatedly held that payment of a part of the purchase money, although not sufficient to invest the purchaser with the character of a *bona fide* purchaser as regards the estate purchased, does give him the right to invoke the aid of the equitable principle, that he who claims equity must do equity, and require reimbursement, from the rightful owner, of all moneys paid before notice, as a condition to granting the first purchaser or incumbrancer relief. ` Yost` v. *Martin*, 3 Serg. & R. 423; *Bellas* v. *McCarthey*, 10 Watts, 67; *Juvenal* v. *Jackson,* 2 Harris, 519; *Urich* v. *Beck*, ib. 636; 4 ib. 499. The same court also holds that the expenditure of money on the premises, in their improvement by the purchaser, when no portion of the purchase money has been paid, if done before notice, entitles the vendee to the same rights. *Boggs* v. *Varner*, 6 W. & S. 469. And it seems that protection will be given, in some form, for all payments and improvements made before notice, although payment in full may be required to constitute a good bar by plea to the bill. *Farmers' Loan and Trust Company* v. *Maltby*, 8 Paige, 361; *Everts* v. *Agnes*, 4 Wiscon. 343; *Flagg* v. *Mann*, 2 Sumn. 486. Notes or bills on third persons, paid, are equivalent, in most cases, to actual payment.

In the case of *Freeman* v. *Deming*, 3 Sandf. Ch. 327, it was held that where notes are given by the purchaser, and they are negotiated before notice, so as to render the vendee liable at all events, that will be treated as a payment. Whilst cases are found, in the courts of this country, which hold that, unless all the purchase money is paid before notice, equity will not afford any protection, we think the former cases announce a rule more consonant with the principles of equity.

Why should a person execute a deed apparently absolute, and thus induce others, on the faith of the deed, to purchase, pay a portion of the money, and then come in and claim a secret lien or trust in the premises, and override his claim, and leave the purchaser to get his money back as best he can? This rule was applied in the case of *Roberts* v. *Opp*, 56 Ill. 34. In that case, the complainant, although held to have an interest in the land, was required to take her interest in the unpaid notes given for the purchase money, and not her share in the land, although a trust was established in the vendor, and the vendee had not paid the purchase money.

Had it appeared that the notes given by the railway company had been actually negotiated before notice, then we should have been inclined to hold that appellee would have been precluded from asserting any claim to a lien on the land. In such a case, his only remedy would have been against Baldwin individually.

It is, however, insisted, that the evidence fails to establish any lien in favor of appellee. It is not contested that the assignment of the mortgage on Morey to Baldwin was more than a security for the payment of $2000, loaned by the latter to appellee. It, then, devolved upon Baldwin to show that it subsequently became absolute, in fact as well as in form. This he attempted to do by evidence that appellee wrote him, before the sale, if he would surrender his note, that he would give up the Morey mortgage, and he could make his money out of the land; and Baldwin claims that he sent his note, in compliance with this request; but appellee denies this in the most emphatic terms. On this question, the evidence is irreconcilably conflicting; but the court below held that Baldwin had failed to show this fact, and, after a careful examination of the testimony, we are not prepared to hold that he erred. It is true, that the question is not free from doubt, but that doubt should incline the chancellor to disallow the defense. Baldwin, to recover, was bound to establish this defense by a preponderance of evidence, and we

are unable to say that he has.    It is true, that the destruction of the letter and other papers by the fire of the 9th of October, 1871, has rendered it more difficult to make such proof, but that is his misfortune, and we are unable to violate the rules of evidence to relieve against its effects.

Inasmuch as appellee invested Baldwin with apparent absolute title, and the railroad company became the purchasers without notice, and had paid half of the purchase money, and received a deed for the land before notice, they should not be disturbed in that purchase, if appellee can otherwise obtain his rights.    It is not disputed that the railroad company contracted to pay the full value of the land, and hence, that sale should not be disturbed.

Out of the proceeds of that sale, Baldwin should be permitted to retain, first, the amount due on the Dobbins notes; next, the amount due on the $2000 due him for money loaned appellee; and then the remainder of the Morey mortgage, after deducting therefrom the amount due Baldwin on his loans to appellee, should be paid out of the balance of the purchase money due from the railroad company, if there shall be a sufficient sum therefor, and if more than enough, then the balance be retained by Baldwin.    This disposition of the fund proceeds upon the ground that Baldwin has not transferred the notes of the railroad company to a *bona fide* purchaser.    If, however, he has, then the decree should be against him personally for appellee's portion of the purchase money owing by the railroad company.

The decree of the court below is reversed and the cause remanded.

*Decree reversed.*