KENNETH D. HOCKING *et al.*, Plaintiffs and Counterdefendants-Appellants, v. ASHLIE R. HOCKING *et al.*, Defendants (Burton Hocking, Counterplaintiff and Cross-Plaintiff-Appellee; Ashlie R. Hocking *et al.*, Cross-Defendants).

Fifth District   No. 5—84—0555

Opinion filed September 19, 1985.

Ray Fehrenbacher and Gary E. Milone, both of Fehrenbacher Law Offices, of Olney, for appellants.

Alice M. Jordan, of Richard C. Cochran Law Office, of Fairfield, for appellee.

PRESIDING JUSTICE JONES delivered the opinion of the court:

The instant action was brought to partition real estate that had been found in a previous action, *Hocking v. Hocking* (1979), 76 Ill. App. 3d 29, 394 N.E.2d 653, to be held by Ashlie Hocking as trustee in resulting trust for his three brothers, his sister and himself. Burton Hocking, not a sibling to the aforementioned Hockings, was joined as a party defendant because he held a contract for deed on the property involved. Burton Hocking subsequently filed a counterclaim for specific performance of his contract for deed, and the trial court entered summary judgment in his favor. We reverse.

On March 5, 1976, an agreement for warranty deed was entered into between Ashlie and Olive Hocking, husband and wife, as sellers, and Burton Hocking, as buyer, for certain described real estate in Edwards County, Illinois, comprising approximately 103 acres. By its terms the contract provided for a down payment of $4,000 upon execution of the contract and for payment of the balance of $36,000 in January 1977, at which time Burton Hocking would gain possession of the property.

On November 12, 1976, a notice of *lis pendens* covering the described property was filed and recorded in the office of the Edwards County recorder of deeds. A complaint was filed simultaneously, alleging that the property was held by Ashlie Hocking in resulting trust for the benefit of his three brothers, Kenneth, Burl and Dennis Atwood Hocking, his sister, Harriett Hocking Chamberlin, and himself. The case was tried and a resulting trust was imposed. On appeal, this court affirmed the finding of a resulting trust, holding that the evidence demonstrated that the property, although legally

titled in Ashlie Hocking, had been purchased, possessed and controlled by Ashlie's father, Dennis Ashlie Hocking, during his lifetime and that Ashlie Hocking thus held this property in resulting trust for the benefit of the heirs of Dennis Hocking. *Hocking v. Hocking* (1979), 76 Ill. App. 3d 29, 394 N.E.2d 653.

The contract for deed between Ashlie and Olive Hocking and Burton Hocking was recorded on April 11, 1978, after the complaint for resulting trust was filed in November 1977, but before judgment was entered in that cause on August 28, 1978. Burton Hocking was not made a party to the resulting trust action and did not seek to intervene during the pendency of that cause.

On August 28, 1978, upon entry of judgment in the resulting trust action, plaintiffs Kenneth and Burl Hocking and Harriett Hocking Chamberlin filed the instant action for partition of the real estate in question, naming as defendants their brother Ashlie, his wife Olive, and Burton Hocking. A fifth brother, Dennis Hocking, was joined as a defendant but did not answer or participate in the cause. In their complaint the plaintiffs alleged that the contract for deed held by Burton Hocking was void as to them and prayed that it be set aside and removed as a cloud upon their title to the real estate.

Burton Hocking subsequently filed a counterclaim against the plaintiffs and codefendants Ashlie and Olive Hocking in which he sought specific performance of his contract for deed with Ashlie and Olive Hocking. In his countercomplaint Burton Hocking alleged that he had paid the $4,000 down payment as provided by the contract and had tendered the balance of the contract price in January 1977 but that Ashlie and Olive Hocking had refused to receive this sum or to deliver a deed to the property in question. Burton Hocking further alleged that he had entered into the contract for deed with Ashlie and Olive Hocking without notice of the alleged resulting trust and before the action for resulting trust was filed in November 1976.

Motions for summary judgment were filed by both the plaintiffs and defendant-counterplaintiff Burton Hocking. In affidavits accompanying his motion for summary judgment, Burton Hocking again asserted that at the time of execution of the contract for deed, he had been unaware of any dispute as to the ownership of the real estate in question or the plaintiffs' interest therein and that from hs inspection of the property and an examination of the records through his attorney, he was put on notice of no such interest. In a further affidavit accompanying Burton's motion for summary judg-

ment, Ashlie Hocking stated that at the time of execution of the contract for deed, he too had been unaware of any dispute regarding ownership of the property and, believing himself to be the sole owner of the property, had so represented himself to Burton. These assertions were disputed by plaintiff Burl Hocking in an affidavit objecting to Burton Hocking's motion for summary judgment, in which he stated that Ashlie Hocking had had knowledge of the plaintiffs' interest in the real estate involved as shown by letters from Ashlie to his brothers and sister in January 1960 and November 1968 and by a letter to Ashlie Hocking in December 1974 from the plaintiffs' attorney stating that the plaintiffs wished to institute legal action to compel Ashlie to divide the property with them. Burl Hocking further stated that he had exercised possessory rights to the real estate both before and after the resulting trust action was filed in November 1976 and that Burton Hocking had had actual notice thereof.

In their motion for summary judgment, the plaintiffs stated that at the time their *lis pendens* notice and resulting trust action were filed in November 1976, Burton Hocking had had no interest of record in the subject property and was not in possession of the property. The plaintiffs asserted, therefore, that pursuant to the statute regarding *lis pendens* notice (Ill. Rev. Stat. 1975, ch. 110, par. 405), Burton would be deemed a subsequent purchaser and would be bound by the proceedings of the resulting trust action as though he had been a party thereto.

Finally, in an amended motion for summary judgment, Burton Hocking stated that he had not been made a party to the resulting trust action even though "some or all of the parties [had] had actual notice of his claimed interest in the property" and that, therefore, he was not bound by any ruling entered in that cause. Burton asserted further that since there had been no findings in the resulting trust action limiting the trustee's power to deal with the trust property or setting aside any prior actions by the trustee, the beneficiaries of the trust were entitled only to the interest held by the trustee in November 1976 and thus must be bound by the contract for deed. Burton concluded by stating that he had entered into the contract for deed as a *bona fide* purchaser for value and, as such, was not affected by Ashlie Hocking's status as either sole owner or trustee of the property in question.

The trial court entered judgment on July 31, 1984, granting defendant-counterplaintiff Burton Hocking's motion for summary judgment on his counterclaim for specific performance of the con-

tract for deed. In an extensive memorandum of judgment, the court observed that the *lis pendens* notice of November 12, 1976, constituted actual notice to Burton Hocking that a proceeding was being conducted involving the real estate in question and that his rights might be affected. The court noted that while a judgment was entered in that cause finding that a resulting trust existed as a result of acts of Dennis Hocking and Ashlie Hocking, "[at] no place in the pleadings [or] in the decision [of the resulting trust action] was there any request or ruling that the acts of the trustee [Ashlie Hocking] should be set aside, defined or limited." After setting forth the relevant dates of the execution and recording of the contract for deed and the filing and decision of the resulting trust action, the court continued:

"7. The Court finds from the uncontradicted facts set forth in [the] affidavits that the dealings between BURTON HOCKING and ASHLIE HOCKING were open and without fraud as far as the two parties were concerned and that the purchase price was the fair market value at the time of the contract.

8. The Court further finds that the issues raised as to whether BURTON HOCKING was a bona fide purchaser are moot in the determination of this case, except [as] they might apply to the dealings between BURTON HOCKING and ASHLIE HOCKING, previously determined and set out above.

9. The Court finds that prior to the suit seeking a resulting trust, the trustee, ASHLIE HOCKING, acted with great latitude when it came to the handling of this real estate, which included maintenance, management decisions and the collection of all rents and profits.

\* \* \*

11. The Court therefore finds that the Agreement for Warranty Deed between BURTON HOCKING and ASHLIE HOCKING, as trustee of the resulting trust, appears to be and is in all respects binding upon all the parties."

The court concluded by ordering the specific performance of the contract for deed "entered into on the part of [the beneficiaries of the resulting trust]" by Ashlie Hocking.

On appeal the plaintiffs contend that the trial court erred in granting summary judgment to defendant-counterplaintiff Burton Hocking on his claim for specific performance where Burton Hocking received notice of the beneficiaries' interest in the resulting trust property prior to completing purchase of the property. They assert that, contrary to the trial court's reasoning, Burton Hocking's

status as a *bona fide* purchaser was relevant to his claim for specific performance because of their rights, as beneficiaries of the resulting trust, to follow trust property that has been diverted into the hands of one who has taken with notice. Finally, in a related argument, the plaintiffs assert that the trial court's finding that they were entitled only to the proceeds resulting from sale of the trust property because such sale came within Ashlie Hocking's powers as resulting trustee was contrary to law and, at most, raised an issue of fact regarding the scope of Ashlie's powers, as resulting trustee, to deal with the trust property on their behalf.

■■ It is settled that beneficiaries of a trust, whether express or implied, may, where the rights of innocent third parties have not intervened, follow and recover trust property that has been diverted, regardless of the form into which it has been converted or into whose hands it has come. (*Lake City Corp. v. Michigan Avenue National Bank* (1975), 33 Ill. App. 3d 100, 337 N.E.2d 251; 35 Ill. L. & Prac. *Trusts* sec. 225 (1958).) Conversely, the beneficiaries' right to follow and reclaim trust property is cut off by the transfer to one occupying the position of a *bona fide* purchaser for value without notice of the trust. *Lake City Corp. v. Michigan Avenue National Bank* (1975), 33 Ill. App. 3d 100, 337 N.E.2d 251; Bogert, Trusts & Trustees sec. 881 (2d ed. rev.1982).

In order to gain the benefit of the *bona fide* purchaser rule, one must have acquired legal title to the property in question and paid value therefor without knowledge of the equities against the property at the time he acquired title and paid value. (Bogert, Trusts & Trustees sec. 881 (2d ed. rev. 1982).) Thus, it is generally accepted that this rule may not be invoked by one merely holding a contract for purchase of the trust property from the trustee. (Bogert, Trusts & Trustees sec. 885 (2d ed. rev. 1982); 90 C.J.S. *Trusts* sec. 442 (1955); see *Long Lake Lumber Co. v. Stewart* (1939), 198 Wash. 348, 88 P.2d 414.) Rather, a purchaser of trust property, to be protected, must be a *bona fide* purchaser not only at the time of execution of the contract but also when the purchase money is paid and legal title passed. (76 Am. Jur. 2d *Trusts* sec. 270 (1975); Bogert, Trusts & Trustees sec. 885, at 181 (2d ed. rev. 1982); *Cf. Lake City Corp. v. Michigan Avenue National Bank* (1975), 33 Ill. App. 3d 100, 337 N.E.2d 251: purchaser of trust property not *bona fide* purchaser where received notice of plaintiff's beneficial interest before conveyance of legal title.) By reason of this rule,

"[i]f a purchaser of trust property receives notice that the sale was in breach of trust after he has paid a part of the

purchase price but before he has paid the whole of it, *** the purchaser can be compelled to restore the property to the trust." (4 Scott, Trusts sec. 303, at 2448-49 (3d ed. 1967).)
Similarly,

"if the trustee in breach of trust makes a contract to sell *** trust property to a third person, the third person cannot compel specific performance of the contract, even though he had no notice of the trust at the time when the contract was made and paid value before receiving such notice." (Restatement (Second) of Trusts sec. 310 (1959).)

This result obtains because a contract vendee, prior to obtaining legal title, holds only an equitable interest in the trust property, and a court of equity will not enforce the contract to the detriment of prior equitable interests of the trust beneficiaries (see Bogert, Trusts & Trustees sec. 885, at 185 (2d ed. rev. 1982)) or assist in a transfer of property that would be in breach of trust (see Restatement (Second) of Trusts sec. 310, comment a, at 102 (1959)).

■ Applying this rule to the instant case, Burton Hocking would not be entitled to specific performance of the contract for deed as a *bona fide* purchaser despite his alleged lack of notice of the beneficiaries' interest at the time of execution of the contract when he later received such notice prior to completing the purchase and obtaining legal title to the property. The issue remains, however, as to whether the sale by Ashlie Hocking to Burton Hocking did, in fact, constitute a breach of trust or whether, by reason of his prior dealings regarding the property, Ashlie Hocking had authority to sell the trust property without being in breach of trust.

It is evident that the sale of trust property by a trustee having the power to sell will not constitute a breach of trust. Where a trustee has acted properly in the exercise of powers conferred upon him in the selling of trust property, neither he nor the beneficiaries can set aside the sale, and the purchaser holds free of the trust, while the beneficiaries have claim only to the proper application of the proceeds. (4 Scott, Trusts sec. 283 (3d ed. 1967).) It is, therefore, only when a trustee commits a breach of trust in making a transfer that the purchaser's status as a *bona fide* purchaser becomes important. 4 Scott, Trusts sec. 283 (3d ed. 1967).

■ In the instant case the trial court found that Burton Hocking's status as *bona fide* purchaser was irrelevant to his claim for specific performance of the contract for deed with Ashlie Hocking because Ashlie Hocking had "acted with great latitude [in] handling [the] real estate, which included maintenance, management decisions

and the collection of all rents and profits." Expanding upon this implicit finding by the court that Ashlie's sale of the trust property did not constitute a breach of trust, Burton Hocking asserts on appeal that once the resulting trust was established, Ashlie Hocking had all the powers of a trustee of an express trust, including the power of sale, and that any breach of trust by Ashlie derived from his failure to divide the proceeds of the sale, which would not affect Burton's rights as transferee of the trust property. We find such a position, however, to be contrary to law and unsupported by the factual circumstances giving rise to the establishment of the resulting trust in Ashlie Hocking for the benefit of the heirs of Dennis Hocking.

While a resulting trust, where established, is governed generally by the same rules and doctrines as an express trust, the specific powers and duties of a trustee by operation of law are, as a rule, more limited in number than the duties of a trustee under an express trust. (76 Am. Jur. 2d *Trusts* sec. 192 (1975).) A resulting trust is imposed by law to carry out the presumed intention of the parties at the time it was created and, as a consequence,

> "[o]ften the only duty of a trustee by operation of law is to convey the legal title and possession to the cestui que trust at once, or to account, and to exercise due diligence and good faith, as is required of a trustee generally. Indeed, the powers and duties of a trustee by operation of law are limited to those imposed by law, whereas those of an express trustee depend both upon the terms of the trust and upon the law. A trustee by operation of law may do things and incur obligations necessary for the preservation of the trust estate, but any obligation incurred by such a trustee in excess of his powers as such cannot become an obligation enforceable against the trust estate ***." 76 Am. Jur. 2d *Trusts* sec. 192, at 426 (1975).

The resulting trustee, to the extent that a comparison may be made to an express trustee, has been said to be like the trustee of an express passive trust (Restatement (Second) of Trusts, Introductory Note, at 325 (1959); 89 C.J.S. *Trusts* sec. 98, at 940 (1955)), who is merely the depository of the legal title with no duties being imposed upon him as to the management, control or disposition of the property, except to make a conveyance when called upon by the *cestui que* trust. (*Laing v. Laubach* (1965), 233 Cal. App. 2d 511, 43 Cal. Rptr. 537; *Shelton v. Harrison* (1914), 182 Mo. App. 404, 167 S.W. 634; see Tiffany, Real Property sec. 190, at 176-77 (1940).) In

the absence of such duties from which the power to sell could be implied, as in the case of the trustee of an express active trust (see Tiffany, Real Property sec. 192, at 179 (1940)), the resulting trustee could not acquire the power to sell by virtue of his dealings with the property. Rather, the resulting trustee, like the trustee of a passive trust, could perform certain nonactive functions, such as receiving rents and profits, collecting money and paying it over to the beneficiary, and paying taxes if the beneficiary failed to do so, but could not convey title to the trust property without the consent of the beneficiary. 90 C.J.S. *Trusts* sec. 178, at 67-68 (1955).

In the instant case a resulting trust was held to exist in Ashlie Hocking as a result of the payment by his father, Dennis Hocking, of the purchase price of the property that was legally titled in Ashlie. (*Hocking v. Hocking* (1979), 76 Ill. App. 3d 29, 394 N.E.2d 653.) In our prior opinion, of which we may take judicial notice (see *Brumley v. Touche Ross & Co.* (1984), 123 Ill. App. 3d 636, 463 N.E.2d 195; *Filrep v. Barry* (1980), 88 Ill. App. 3d 935, 410 N.E.2d 1137), we observed that although legal title was transferred to Ashlie Hocking in December 1926, Dennis Hocking "retained possession of the property during his lifetime and apparently made all management decisions and collected rents and profits, except for oil royalties ***." (*Hocking v. Hocking* (1979), 76 Ill. App. 3d 29, 31, 394 N.E.2d 653.) The oil royalties were received by Ashlie pursuant to an oil lease negotiated by Dennis but executed by Ashlie in 1941 and were retained in a separate account used for expenses associated with the property and for Dennis' living expenses. It was only after Dennis' death in 1968 that Ashlie, contrary to his father's previous statements that Ashlie would handle division of the "home place" after his death, assumed control of the property and "paid all expenses connected with its maintenance, made all management decisions, and collected all rents and profits." (*Hocking v. Hocking* (1979), 76 Ill. App. 3d 29, 33, 394 N.E.2d 653.) When, in September 1973, Ashlie's sister wrote to him requesting that he divide the home place, he asserted full ownership of the property, and suit was subsequently filed which culminated in the finding that Ashlie Hocking held the property in resulting trust for the benefit of the heirs of Dennis Hocking.

From this review of the law and the facts of the instant case, it can be readily seen that the sale of trust property to Burton Hocking was outside the scope of Ashlie Hocking's powers as resulting trustee and contrary to the presumed intent of the *cestui que* trust, Dennis Hocking, in whose shoes the plaintiffs-beneficiaries now

stand. From the time the resulting trust arose upon the vesting of title in Ashlie, he had only a bare legal title with no active duties nor corresponding powers. Thus, any assumption of such active duties after the death of Dennis Hocking was unwarranted and could not serve to augment his powers to deal with the property. Moreover, by the time Ashlie entered into the contract for sale with Burton Hocking in March 1976, he had repudiated the trust imposed upon him by asserting full ownership in himself and thus was acting on his own account and not for the benefit of or on behalf of the beneficiaries of the trust. In any event, the sale to Burton Hocking could not be said to be at the request of or with the consent of all the beneficiaries and so must constitute a breach of trust by Ashlie as resulting trustee.

■ Since, as discussed above, Burton Hocking did not complete purchase of the trust property without notice of the beneficiaries' interest or the breach of trust that would result from sale of the property, he cannot claim benefit of the *bona fide* purchaser rule so as to compel specific performance of his contract for sale against the beneficiaries of the trust. We find no merit in Burton's further argument on appeal that the plaintiffs-beneficiaries acquiesced in, and therefore ratified, the sale of trust property to Burton because they failed to object to a sale even though it was "common knowledge" in the community that the property was for sale. The plaintiffs' lack of assent to the sale by Ashlie is manifested by their action, filed later that year, to establish the resulting trust and by their subsequent action to enforce that trust by seeking partition of the real estate in question. Nor do we believe that the plaintiffs were precluded from challenging the sale by their failure, noted by the trial court, to request in the first action that the acts of the trustee be "set aside, defined or limited." While it may have been a better, and more usual, practice to seek the establishment and enforcement of the resulting trust in the same action, the plaintiffs did not lose their right to enforce the judgment of resulting trust by way of a later proceeding. See 76 Am. Jur. 2d *Trusts* sec. 645, at 854 (1975) (court of equity will decree conveyance by trustee to beneficiary where there is need for such relief, as where trustee of resulting trust refuses to convey legal title to *cestui que* trust).

■ Burton's additional contention that he cannot be bound by the judgment of resulting trust since he was not made a party to that action must likewise fail where he has had an opportunity to litigate his interest in the property in the instant action. While we agree that Burton, who held a beneficial interest in the trust prop-

erty by virtue of his contract for sale, would have been a proper party in the resulting trust action (see 35 Ill. L. & Prac. *Trusts* sec. 234 (1958)), the plaintiffs' failure to join him as such did not deprive them of the right to enforce the judgment as to him in this subsequent action to which he is a party.

We would note finally that since our decision here is based upon Burton's actual notice of the plaintiffs' beneficial interest in the trust property prior to completing purchase of the property, the issue addressed by the parties as to whether the plaintiffs may rely upon the *lis pendens* statute (Ill. Rev. Stat. 1985, ch. 110, par. 405) as providing constructive notice of the resulting trust action to Burton is not determinative. The plaintiffs' allegation that Burton had actual notice of their claimed interest when the resulting trust action was filed in November 1976 is not disputed by Burton, who alleges only that he had no notice of the plaintiffs' interest when the contract for sale was executed in March 1976. Accepting as true this allegation of actual notice, Burton could not have completed purchase of the property pursuant to contract in January 1977 without notice of the plaintiffs' interest so as to have superior rights to the property as a *bona fide* purchaser. While Burton thus may not compel specific performance of the contract for sale, he is entitled under Illinois law to reimbursement of the $4,000 down payment made prior to receiving notice of the plaintiffs' interest. See *Redden v. Miller* (1880), 95 Ill. 336; *Baldwin v. Sager* (1873), 70 Ill. 503.

Finding that no issue of genuine fact remains, we hold, therefore, that the trial court's grant of summary judgment on Burton Hocking's countercomplaint for specific performance be reversed and that summary judgment be granted for the plaintiffs on their complaint to set aside the contract for deed as to Burton Hocking and to enforce the resulting trust. The trial court is directed upon remand to order the reimbursement to Burton Hocking of the $4,000 down payment made by him on the contract for sale.

Reversed and remanded with directions.

KASSERMAN and WELCH, JJ., concur.