In re MASTERCRAFT METALS,
INC., Debtors.

Bruce E. STRAUSS, Trustee, Plaintiff,

v.

MASTERCRAFT METALS, INC., et
al., Defendants.

Bankruptcy No. 89–41151–2–11.
Adv. No. 89–4245–2–11.

United States Bankruptcy Court,
W.D. Missouri.

May 3, 1990.

Joe Harter, McDowell, Rice & Smith, Kansas City, Mo., for First State Bank.

Scott B. Haines, Gladstone, Mo., for defendants Arrowhead Grating and Metalworks.

Bruce E. Strauss, James L. Baker, Kansas City, Mo.

Michael R. Roser, Kansas City, Mo., for Rich–Con Steel.

Jack R. Grate, Jr., Independence, Mo., for debtor.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

Mastercraft Metals, Inc. (Mastercraft), filed for bankruptcy protection under Chapter 11 on May 25, 1989. The case was converted to a Chapter 7 on August 4, 1989. Around August 22, 1989 Modern Builders Industrial Concrete Company (Modern Builders) delivered to the Trustee a check made jointly payable to Mastercraft and Arrowhead Grating and Metalworks, Inc. The check was in the amount of $33,437.00. The next day, Arrowhead filed a proof of claim which included the $33,437.00 allegedly owed to Arrowhead for materials delivered to Modern Builders. Because these funds were potentially sub-

ject to competing claims from numerous parties, the Trustee brought the present interpleader action under Bankruptcy Rule 7022, 11 U.S.C. on Oct. 2, 1989.[1] At issue is who is entitled to the check issued by Modern Builders.

Evidence at trial, as well as a Stipulation between Arrowhead and First State Bank of Kansas City, Kansas reveal the following facts. On the First of July, Mastercraft, Arrowhead, and Modern Builders entered into a valid Joint Payment and Request Agreement. This agreement was related to a project in Joliet, Illinois on which Mastercraft was a subcontractor to Modern Builders, and Arrowhead was in turn a supplier subcontractor to Mastercraft. Arrowhead, Mastercraft, and Modern Builders entered into this agreement in an effort to ensure that Arrowhead would get paid on the jobs in which it supplied materials to Mastercraft. Late payments by Mastercraft during prior dealings with Arrowhead cast doubt on its ability to pay its bills to Arrowhead in a timely manner.

On May 31, 1989 Arrowhead billed Mastercraft in the amount of $5,488.00 for materials supplied by Arrowhead to Mastercraft in connection with the aforementioned Illinois Project.[2] A week or so later, Arrowhead again billed Mastercraft for materials supplied in connection with the Illinois project, this time in the amount of $27,949.00.[3] Around August 22, 1989, Modern Builders made a check in the amount of $33,437.00 payable jointly to Mastercraft and Arrowhead pursuant to the Joint Payment Request and Agreement mentioned above.

Soon thereafter, Mastercraft filed bankruptcy and the check was delivered by Modern Builders to the debtor's Chapter 7 Trustee. In bringing the interpleader action to resolve the question of who is entitled to the proceeds of the check, the Trustee noted that the following parties all had

---

**1.** This Court has jurisdiction over this proceeding under 28 U.S.C. § 1334 and 28 U.S.C. § 157(b). Venue is proper under 28 U.S.C. § 1409.

**2.** The parties agree that all materials supplied by Arrowhead Grating to Mastercraft were for a

project known as "Eastside WWPT, Phase 3," located in Joliet, Illinois.

**3.** This invoice was sent on or about June 7, 1989.

potential claims to the Modern Builders check:

> First State Bank of Kansas City, Kansas, a creditor which has claimed a right to the check pursuant to a security interest in Mastercraft's accounts receivable;
>
> Rich Con Steel, another creditor of Mastercraft, which allegedly has an interest in Mastercraft's accounts receivable;
>
> Arrowhead Grating and Metal Works, Inc., the above mentioned joint payee on the Modern Builders check, a subcontractor/supplier of and to Mastercraft;
>
> Vaughn Short, the lessor of certain property located in the State of Missouri, who possibly had a statutory lien against Mastercraft's assets.

Notwithstanding the Trustee's original identification of the above interested parties, First Bank and Arrowhead remain the only two contenders still in the arena and vying for the right to the proceeds. Rich-Con withdrew its claim December 4, 1989 on the condition that First State Bank would not raise failure to assert a claim or collateral estoppel as affirmative defenses against Rich-Con in any subsequent actions related to the withdrawn claim and the present interpleader action. First State claims that it has a prior and duly perfected first lien security interest in the funds—and that it is entitled to recover the funds at this time. Mastercraft Metal, the Trustee and Vaughn Short have not claimed an interest in the check except that the Trustee would not eschew a fee for filing the interpleader action. Those parties, therefore, have apparently relinquished whatever interests they may have in the proceeds. Arrowhead argues that it is entitled to the check and its proceeds as payment for materials it supplied to Modern Builders under the agreement.

A clear path of analysis is somewhat obstructed by the fact that the events and parties in the present case have significant connections to the states of Kansas, Missouri, and Illinois, thus making it unclear which laws to apply in resolving the questions before the court.

■ The question of which state's laws to apply to the relationship between First Bank and Mastercraft admits of somewhat easy resolution. Pursuant to the security agreement between First Bank and Mastercraft, their secured transaction is governed by the laws of the State of Kansas.[4] Insofar as neither party challenged the validity of this clause, and because it seems reasonable that the rights of a Kansas lender should be determined under Kansas law, this Court turns to that state's laws in resolving First Banks' rights under the security agreement. Cf. *Marquette National Bank of Minneapolis v. First of Omaha Serv.*, 439 U.S. 299, 99 S.Ct. 540, 58 L.Ed.2d 534 (1978).

■ The question of which state's laws should govern the parties rights to the check is somewhat more problematic as already stated, First State Bank is a Kansas resident. Modern Builders is apparently an Illinois corporation. Arrowhead and Mastercraft, the joint payees, are Missouri corporations. The check, which was payment for goods delivered from Missouri to Illinois for use on an Illinois project, was drawn on an Illinois bank.[5] The questions of where the parties executed the contract for materials, and where they executed the joint check agreement, were not addressed by the parties. And, of course, there is no one agreement joined in by all the parties. However, since it seems clear that First State Bank's position must rise or fall based on Mastercraft's claim to the funds, the totality of the circumstances surrounding the joint payment agreement and the issuance of the check leads to the conclusion that Illinois law should be applied in resolving the question of whether Arrowhead, Mastercraft, or the Bank, are entitled to the check and its proceeds.

4. The second page of the lender's copy of the security agreement contains the following clause under the heading of "General Provisions":

5. JURISDICTION. The validity, construction, and enforcement of this agreement shall be governed by the Law of Kansas.

5. First Midwest Bank of Joliet, Illinois.

In resolving a choice-of-law question, the choice-of-law rules of the state where suit is brought are applied. In Missouri, the rule of lex loci contractus applies to a choice of law conflict involving a contract. Under this rule, the laws at the time and place where a contract is made governs its execution, interpretation and validity, while matters involving its performance are controlled by the laws at the time and place it is to be performed. *Handly v. Lyons,* 475 S.W.2d 451 (Mo.App.1971); *State ex rel McCubbin, Admr. v. McMillian,* 349 S.W.2d 453 (Mo.App.1961); *Scudder v. Union National Bank,* 91 U.S. 406, 23 L.Ed. 245 (1875). In the case at bar, this Court seeks the answers to several questions involving the interpretation of the joint check agreement, namely what rights were intended to be conferred, or were conferred by operation of law, upon execution of the joint check agreement. Insofar as it appears that the joint payment agreement was executed and performed in Illinois, Illinois law controls the questions of interpretation.

In passing, it should be noted that neither party identified or addressed the choice of law problem. Consequently, neither Arrowhead nor First Bank submitted specific evidence directed to show where the joint check agreement was executed. However, this Court has researched the laws of both Missouri and Illinois and concludes that the laws of the two states are sufficiently similar that a different outcome would not result if Missouri law were applied instead.

First Bank alleges that under the security agreement executed between it and Mastercraft, it is entitled to the check as the "proceeds" of an "account" in which it has a security interest. Kansas law defines an "account" as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance." K.S.A. § 84–9–106 (1983). Payment in satisfaction of an account is within the definition of proceeds of under Kansas law. K.S.A. § 84–9–306.[6] *Bank of Kansas v. Hutchinson,* 13 Kan.App.2d 421, 773 P.2d 660 (1989) aff'd 246 Kan. 83, 785 P.2d 1349 (1990). The parties agree that First Bank has a valid, perfected security interest in Mastercraft's accounts and their proceeds. Thus, if debtor Mastercraft in fact has "a right to payment" of the funds represented by the Modern Builders check, First Bank is entitled to the funds pursuant to its security agreement with Mastercraft.

■ To decide what rights enured to Mastercraft as a result of its dealings with Modern Builders and Arrowhead, we must view the facts of the case under the light of Illinois law. While the Illinois Uniform Commercial Code states that a check made out to joint payees requires the signatures of both payees, the Code does not spell out the rights of joint payees to the proceeds of such a check. Ill.Rev.Stat.1987, ch. 26, ¶ 3–116. Help in resolving that tangled web must come from another source. Arrowhead argues that at best Mastercraft's interest in the check was as a "trustee" holding mere legal title to benefits owing to Arrowhead. This Court agrees.

■ In the absence of a specific agreement, a mere fiduciary relationship between parties does not create an express trust. No evidence was presented to indicate that the parties herein made any efforts to comply with the formalities generally required to create a valid express trust. In Illinois, as in Missouri, a resulting trust, a creature of equity, may be created without the aforementioned formalities.[7] Such a trust is founded upon pre-

---

6. In part, K.S.A. § 84–9–306 provides that "Proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds.

7. In Missouri, A resulting trust is created by operation of law from the facts of the transaction and not from an agreement, from what the parties do and never from what they agree to do. *Duncan v. Rayfield,* 698 S.W.2d 876 appeal after remand 751 S.W.2d 763 (Mo.App.1988). For a "resulting trust" to arise, the claimed cestui beneficiary must have furnished the consideration, or a fixed proportionate part, and there must be a presumed intent of the legal owner to hold for the beneficiary. *Ellis v. Williams,* 312 S.W.2d 97 (Mo.1958); *Fulton v. Fulton,* 528 S.W.2d 146 (Mo.App.1975). *Swon v.*

sumptive intent. *Cook v. Patrick*, 135 Ill. 499, 26 N.E. 658 (1891). A resulting trust, or an "intent enforcing trust," is created by operation of law based on the presumed intent of the parties. *In re Estate of Wilson*, 81 Ill.2d 349, 43 Ill.Dec. 23, 410 N.E.2d 23 (1980). The giving of consideration raises a prima facie presumption of a resulting trust. The intent must be gathered from the facts and circumstances of each individual case. *Bowman v. Pettersen*, 410 Ill. 519, 524, 102 N.E.2d 787 (1951); *Peters v. Meyers*, 408 Ill. 253, 258, 96 N.E.2d 493 (1951). The circumstances surrounding execution of the joint payment agreement lend support to the argument that the determination of these rights derives from the law of trusts.

As noted above, Arrowhead, Mastercraft and Modern Builders entered into the joint payment agreement in order to guarantee that Arrowhead would be paid for the materials it supplied to Mastercraft for the benefit of Modern Builders in Peoria, Illinois. The amount represented in the check is in the amount owed to Arrowhead. The benefits of the check were intended to go to Arrowhead. These funds do not in any way, shape, or form represent payment to Mastercraft for any goods or services sold. In essence, Mastercraft was merely acting as a conduit between the parties as far as the materials and check in question were concerned. Arrowhead supplied the $33,-437.00 in materials to Mastercraft to be delivered to Modern Builders. In return, and in accordance with the joint payment agreement, Modern Builders issued the check here in question as payment for materials supplied by Arrowhead. Master-

craft provided not these materials in consideration for any portion of the check. Thus, while the check was made jointly payable to Mastercraft and Arrowhead, Mastercraft at most was the holder of legal title to the check, but never held any beneficial interest in the proceeds. Mastercraft can be considered a trustee of funds owing to Arrowhead, but little more.

As a trustee, Mastercraft is not entitled to the benefits of the trust, namely the check proceeds. Those funds do not represent a right to payment belonging to Mastercraft, but rather a right to payment belonging to Arrowhead for goods sold.[8]

As a trustee by operation of law, Mastercraft owes specific, but limited duties to Arrowhead:

> [O]ften the only duty of a trustee by operation of law is to convey the legal title and possession to the cestui que trust.... and to exercise due diligence and good faith as required of a trustee generally.

*Hocking v. Hocking*, 137 Ill.App.3d 159, 91 Ill.Dec. 847, 484 N.E.2d 406 (5th Dist.1985) citing 76 Am.Jur.2d Trusts § 192 (1975). Therefore, the check should not be considered the proceeds of an account to which Mastercraft has a right to payment. Instead, Mastercraft has a legal interest in the check as a joint payee. Ergo, the beneficial interest in the proceeds enure to Arrowhead, do not become property of the estate, and are not subject to First Bank's security interest.[9]

In passing, this Court notes that while the check is property of the estate under § 541(a)(1), it is only property of the

---

*Huddleston*, 282 S.W.2d 18 (1955). A resulting trust therefore "results" because it would be inequitable to allow the legal titleholder to claim the beneficial interest. *Woodworth v. Mauk*, 614 S.W.2d 308 (Mo.App.1981) (citations omitted).

8. Even if the relationship between the parties lacked such strong beneficial intent, this Court believes that the equities of the case are such as to warrant the imposition of a constructive, or court imposed, trust. See generally, *County of Lake X–Po Security Police Service, Inc.*, 27 Ill. App.3d 750, 755, 327 N.E.2d 96 (2d Dist.1975).

9. A similar result was reached in a Michigan case wherein the question involved whether certain funds were subject to a security interest, or were held as trust property pursuant to a statutory trust. The secured creditor claiming an interest in the account receivable of a debtor building contractor under a security agreement did not have any rights under the security agreement in money owed to the for certain construction work until the contractors statutory trust obligation first to pay subcontractors engaged by it to perform labor or furnish materials had been discharged. *National Bank of Detroit v. Eames & Brown, Inc.*, 396 Mich. 611, 242 N.W.2d 412 (1976).

estate to the extent of the debtors interest of legal title—not to the extent of the equitable interest which belongs to Arrowhead. 11 U.S.C. § 541(d). *In Re Temp-Way Corp.*, 80 B.R. 699 (Bankr.E.D.Pa. 1987) (holding that the interest of the debtor, which was also a subcontractor/installer, in check issued by general contractor and made jointly payable to debtor and materialman, was limited to bare legal title because materialman alone had the equitable interest in the check and the funds it represented).

Notwithstanding the debtor subcontractor's legal interest as payee on a check made jointly payable to it and its supplier, the supplier is entitled to the check and its proceeds, even against a secured creditor with an interest in the debtor's accounts receivable, because the supplier was the sole party entitled to the equitable benefits of the check. The Trustee as a stakeholder of the check filed this interpleader and then (as a stakeholder should) withdrew from the fray. He is entitled to $600.00 for his services as a stakeholder and to be paid from the corpus of the fund interpleaded. The balance goes to Arrowhead Grating and Metalworks.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.