In the Matter of INTERCO INCORPORATED, et al., Debtors,

re Hy–Test, Inc.

HY–TEST, INC., Movant,

v.

NEW ENGLAND SAFETY SHOE COMPANY, Respondent.

Bankruptcy Nos. 91–40442–172, 91–40463–172.

United States Bankruptcy Court, E.D. Missouri, E.D.

Jan. 22, 1992.

See also 135 B.R. 631.

Bryan, Cave, McPheeters & McRoberts, Gregory D. Willard, Lloyd A. Palans, John C. Boyle and Carl J. Spector, St. Louis, Mo., for debtors-in-possession.

## ORDER

JAMES J. BARTA, Bankruptcy Judge.

The matter being considered here is the *Motion to Terminate and (to the Extent Necessary) Reject Shoe Sale Relationship* (the "Motion"), filed by the above-captioned Debtor-in-Possession. The Court has con-

sidered the evidence presented at the hearing, together with the statements of counsel and the record as a whole, and enters the following determinations and orders.

## I. Background

On January 24, 1991, Interco Incorporated and 30 of its direct and indirect subsidiaries including Hy–Test, Inc., filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors are continuing in possession of their property and are operating and managing their businesses as Debtors-in-Possession, pursuant to 11 U.S.C. §§ 1107 and 1108 of the Bankruptcy Code.

This Court has jurisdiction over this matter and the parties and property affected thereby pursuant to 28 U.S.C. §§ 157 and 1334 and Local District Rule 29 of the Rules of the United States District Court for the Eastern District of Missouri. This is a core proceeding pursuant to 28 U.S.C. § 157.

The Chapter 11 case of Hy–Test, Inc. (hereinafter, "Debtor") has been consolidated with the cases of its affiliated Debtors-in-Possession for procedural purposes only and said cases are being jointly administered pursuant to an order of this Court.

On November 27, 1991, Debtor filed its "Motion to Terminate and (to the Extent Necessary) Reject Shoe Sale Relationship." (Motion Z–62). In the Motion, Debtor alleged that, on or about September 2, 1964, it "entered into a certain Industrial Safety Shoe Service Standard Agreement (the 'Contract') with New England Safety Shoe Company ...," the Respondent here. Motion, November 11, 1991 at 2.

Debtor contends the Contract was subsequently "mutually abandoned and terminated by the parties...." Motion at 3. Thus, "neither the Contract nor the ongoing business relationship ... was 'executory' as of the Petition Date." Motion at 4. Therefore, Debtor requests this Court to determine that the relationship with New England Safety Shoe ("N.E.S.S.") at the commencement of this case was not an executory contract within the meaning of 11 U.S.C. § 365(a).

Alternatively, Debtor argues that to the extent the Contract may be determined to be executory, the Debtor's request to reject the Contract should be approved.

N.E.S.S. filed a "Memorandum of Respondent New England Safety Shoe Co., Inc in Opposition to Debtors' Motion to Terminate and Reject Shoe Sale Relationship." ("N.E.S.S. Memorandum"). An affidavit and supporting documentation was attached to the N.E.S.S. Memorandum.

Debtor also submitted supporting affidavits and documentation. The Motion was set for hearing on December 12, 1991. Debtor's Counsel presented oral argument in support of the Motion. Counsel for N.E.S.S. did not appear.

## II. Abandonment of Contract

Section 365(a) of the Bankruptcy Code provides for assumption or rejection of any executory contract of the debtor. The Code does not define the term "executory." However, the United States Supreme Court has stated that a contract is executory if it is a contract "on which performance remains due to some extent on both sides." *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (1988) (citing H.R.Rep. No. 95–595, p. 347 (1977) U.S.Code Cong. & Admin.News p. 5787 (1978)). In the Eighth Circuit, a contract is executory when "the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." *Draper v. Draper*, 790 F.2d 52, 54 (8th Cir.1977) (per curiam), (citing Countryman, *Executory Contracts in Bankruptcy: Part 1*, 57 Minn.L.Rev. 439, 460 (1973)).

■ For Section 365 to apply, the contract must be in existence. "If the contract ... has expired by its own terms or has been terminated prior to the commencement of the bankruptcy case, then there is nothing left" to assume or reject. 2 *Collier on Bankruptcy*, ¶ 365.02, p. 365–16 (15th ed. 1991). Therefore, this Court must consider whether the parties had at

some time abandoned the Contract, leaving nothing to be rejected after the commencement of this case.

 Evidence of abandonment of a contract must be clear and decisive. *Crow v. Bertram,* 725 S.W.2d 634, 637 (Mo.App. E.D.1987). Abandonment can be shown by acts and conduct consistent with the intent to abandon. *Land Improvement, Inc. v. Ferguson,* 800 S.W.2d 460, 464 (Mo.App. W.D.1990).[1]

 Debtor asserts the parties' conduct is consistent with the intent to abandon the Contract. First, Debtor asserts the Contract provides for consignment of shoes from Debtor to N.E.S.S. This Court finds the Contract does, in fact provide that "[t]he relationship of the parties created hereby is that of consignor (Hy-test) and consignee ..." Motion, Exhibit A at 2. The evidence reflects that the Debtor sold, rather than consigned, shoes to N.E.S.S. The parties, in their correspondence, consistently refer to the fact that N.E.S.S. purchased shoes from the Debtor.

Second, the Contract provides that N.E.S.S. "will not sell or stock at the location(s) covered by this Agreement men's safety shoes other than those supplied by [Debtor] hereunder." Motion, Exhibit A. Evidence, in the form of letters between Debtor and N.E.S.S. clearly shows N.E.S.S. did not abide by the exclusivity provision of the Contract. *See, e.g.,* Affidavit of William M. Christensen, Jr., December 19, 1991, Exhibit B (Letter of Edward S. Seremet, Jr., July 1, 1987, p. 2) (stating: "At the present time, this is the case. I now stock *68* styles of safety shoes. *38* are Hytest, or 56%.") (emphasis in original).

This Court finds that, at least by 1987, neither party was abiding by the terms of the written Contract. In fact, the current general manager of the Debtor asserted: "The first time I saw or knew of the Contract was when it was presented to me by [N.E.S.S.] following Debtor's notice that it was terminating the parties' business relationship." Affidavit of William Christensen, Jr., December 19, 1991 at 2. There is sufficient evidence to show the parties intended to and did in fact abandon the written Contract. Therefore, there is nothing left for the Debtor to reject.

 The relationship between Debtor and N.E.S.S. following abandonment of the written Contract was not formalized by a new contract. Instead the evidence reflects that the Debtor "sold shoes outright to [N.E.S.S.] pursuant to orders submitted by [N.E.S.S.] from time to time." Affidavit of William M. Christensen, Jr. at 3. This Sale Relationship continued through the date of the commencement of this case. It did not however, give rise to an executory contract or agreement. Rather, it was a business relationship that could be terminated by either party at will. On August 26, 1991, Debtor notified N.E.S.S. that Debtor intended to terminate this sales relationship and would not fill any orders for

1. N.E.S.S. has its principal place of business in the State of Connecticut. The Debtor is located in Missouri. The parties have not raised a choice of law question. Further, research has not revealed a conflict between the law of the two states. *See Jazlowiecki v. Nicoletti,* 387 A.2d 1081, 1083 (Conn.Super.Ct.1977) ("Mutual assent to abandon a contract may be inferred from attendant circumstances and conduct of the parties."); *accord Rowe v. Cormier,* 189 Conn. 371, 456 A.2d 277, 278 (1983). However, to the extent there is any difference in the test for abandonment, this Court believes Missouri law is applicable based on the following analysis.

The choice of law rules of the forum state are applicable. *Carlson v. Tandy Computer Leasing,* 803 F.2d 391, 393 (8th Cir.1986). "In Missouri, the rule of lex loci contractus applies to a choice of law conflict involving a contract. Under this rule, the time and place where a contract is made govern its execution, interpretation and validity, while matters involving its performance are controlled by the laws at the time and place it is to be performed." *Strauss v. Mastercraft Metals, Inc. (In re Mastercraft Metals, Inc.),* 114 B.R. 183, 186 (Bankr.W.D.Mo.1990) (citations omitted).

The Contract purports to establish a consignment relationship. "Performance" of the contract was to include shipment of shoes, remittance to Debtor of sales proceeds and reports from N.E.S.S. to Debtor. The shoes were to be shipped from Missouri and reports and sales proceeds were to be sent to Missouri. Presumably, N.E.S.S. would sell the shoes in Connecticut. This Court interprets the Contract to reflect that the bulk of the performance was to transpire in Missouri. Thus, Missouri contract law is applicable.

shoes after December 1, 1991 except on an emergency basis. *See* Affidavit of William M. Christensen, Jr., Exhibit C. In the ordinary course of business, the Debtor notified New England Safety Shoe Company of its intention to terminate the Shoe Sale Relationship effective December 1, 1991. This Court finds that the sales relationship that existed after the Contract had been abandoned was terminated by Debtor's notice in the ordinary course of the parties' business. 11 U.S.C. § 363(c).

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

The Debtor's Motion is hereby granted in part. The parties' 1964 Contract had been abandoned prior to the commencement of this case, and is not an executory contract. The Shoe Sale Relationship, as defined in the Motion, is not an executory contract as defined in 11 U.S.C. § 365(a). Therefore, the Shoe Sale Relationship is not subject to rejection, but may be terminated by Debtor. The Shoe Sale Relationship between the Debtor and N.E.S.S. was terminated as of December 1, 1991.

IT IS FURTHER ORDERED that the determination of any postpetition claims by N.E.S.S. which may have arisen from termination of this sales relationship is beyond the scope of this proceeding. Any motion for such determination here is denied without prejudice to such other and further requests as may be later presented.