WILLIAM L. DANIELS, Plaintiff-Appellee and Cross-Appellant, v. JAMES R. ANDERSON *et al.*, Defendants-Appellants and Cross-Appellees (State Bank of Countryside, as Trustee, Counterplaintiff-Appellant; William L. Daniels *et al.*, Counterdefendants-Appellees).

First District (1st Division)   No. 1—91—0498

Opinion filed June 7, 1993.—Rehearing denied September 27, 1993.

Leon Zelechowski, Ltd. (Leon Zelechowski and Karen T. Moses, of counsel), and Law Offices of James S. Montana, Jr. (James S. Montana, Jr., of counsel), both of Chicago, for appellants Nicholas Zografos, State Bank of Countryside, and Lyons Savings & Loan Association.

No brief filed for appellants James R. Anderson and Estate of Stephen Jacula.

Katten, Muchin & Zavis, of Chicago (Stephen D. Libowsky, of counsel), for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff William L. Daniels (Daniels) filed this action involving a driveway easement and right of first purchase against James R. Anderson (Anderson), the estate of Stephen Jacula (Jacula), Nicholas Zografos (Zografos) and certain land trustees. The action sought declaratory and injunctive relief, specific performance, and compensatory and punitive damages. Zografos counterclaimed against Daniels seeking declaratory and injunctive relief relative to the driveway easement.

After a bench trial, the circuit court of Cook County ruled in Daniels' favor on the driveway easement and right of first purchase and against Zografos on his counterclaim. Zografos appeals the court's rulings; Daniels cross-appeals from a portion of the court's judgment which required him to reimburse Zografos for property taxes that Zografos paid during his ownership of the lands subject to Daniels' right of first purchase.

In March 1977, Anderson and Stephen Jacula as beneficiaries, and the Cicero State Bank (now known as the First National Bank of Cicero), as trustee, owned a 10-acre tract of real estate in what is now Burr Ridge, Illinois. When purchased, the 10 acres were subdivided into 29 lots. Anderson and Stephen Jacula then resided on adjoining lands and purchased the property to keep it from being developed in this manner. Following their purchase, Anderson and Stephen Jacula vacated the subdivision and caused the property to be divided into four lots.

The property has retained its four-lot identity until today. Two of the four lots, now owned by Daniels and his wife (the Daniels Property), front 79th Street and are commonly known as 11445 79th Street. The two lots are one acre each in size, with the easternmost lot improved with a single-family home, which was moved onto the property around 1950. The Danielses have resided in this home since March 1977, when they contracted to purchase the Daniels Property.

The third lot (the Contiguous Parcel) lies directly south of the Daniels Property in that the south boundary line of the Daniels Property is also the north boundary line of the Contiguous Parcel. The Contiguous Parcel is vacant, landlocked and approximately two acres in size.

The fourth lot (the Second Parcel) consists of approximately six acres of vacant land, the bulk of which lies directly south of the Contiguous Parcel. A portion of the Second Parcel consists of a 60-foot strip of land directly west of both the Daniels Property and the Contiguous Parcel. This strip of land extends northward alongside the Daniels Property and the Second Parcel until it reaches 79th Street. A gravel driveway rests upon a part of this strip and serves as the ingress and egress to the single-family home situated on the Daniels Property. The driveway has so served since the single-family residence located on the Daniels Property was moved onto the land.

On March 11, 1977, Daniels entered into a written contract with Anderson, Stephen Jacula and the Bank of Cicero, as trustee, to purchase the Daniels Property. The contract consisted of a preprinted form and a rider, the latter containing the following clauses relevant to this appeal:

"*New Subdivision.* The property is presently the subject of a Quo Warranto proceeding by the Village of Burr Ridge against the Village of Willow Springs seeking to determine the validity of the annexations of those Villages. Depending on the outcome of that proceeding, the subject premises may be located in Willow Springs, in Cook County only, or, by further annexation, in Burr Ridge. Following such determinations (or, at Seller's option before) Seller shall file a new subdivision which will establish the subject premises as a separate parcel. Such new subdivision plat shall also provide a 66 foot strip connecting the South 5 acres of said East 10 acres with 79th Street for sole purposes of ingress and egress. Seller shall grant Purchaser a non-exclusive easement, to run with the land for ingress and egress over that portion of such 66 foot strip contiguous to this parcel. ***

\* \* \*

*Right to Purchase Additional Land.* Seller [Cicero State Bank, as trustee,] agrees that he shall grant Purchaser [Daniels] the first right to purchase (on the same terms and conditions, and for the same price, as any bona-fide offer in writing made to Seller) a tract of land approximately two acres in area [the Contiguous Parcel], being that piece adjacent to the above-described property [the Daniels Property] and the Northerly boundary of which is contiguous with the Southerly boundary of the subject parcel. Said right shall be personal to Purchaser, shall not run with the land and shall terminate upon any trans-

fer of title by Purchaser other than a transfer resulting in ownership by Purchaser and his then spouse as joint tenants."

In March 1979, the Daniels Property closed, with the Danielses receiving a trustee's deed. This deed made no reference to any right of first refusal or any driveway easement in favor of the Danielses. Daniels did not record the March 1977 contract until December 8, 1986. Prior to closing, the 66-foot strip mentioned in the contract above was changed to a 60-foot strip. The Danielses purchased the six-foot difference as part of their acquisition of the Daniels Property, paying additional consideration. Despite this additional purchase, a portion of the gravel driveway remained on the Second Parcel.

In June 1979, the Cicero State Bank, as trustee, conveyed the Contiguous Parcel to Stephen Jacula and his wife and the Second Parcel to Anderson and his wife. The deeds reflecting those transfers were recorded in June 1979. The trust thereafter ceased to exist. Daniels was neither contemporaneously informed of the Contiguous Parcel's transfer to the Jaculas nor offered the parcel prior to its conveyance. It is not disputed on appeal that this conveyance failed to trigger Daniels' first purchase rights under the 1977 contract.

In September 1985, Zografos entered a written contract with the Jaculas to purchase the Contiguous Parcel for $60,000. At no time has Daniels received an offer to purchase the Contiguous Parcel.

The September 1985 contract required Zografos to make an immediate payment of $10,000, with the balance incorporated into a judgment note. Zografos paid $15,000 on February 18, 1986, $15,000 on March 22, 1986, and the remaining $20,000 at the closing held August 22, 1986. Zografos recorded a warranty deed to the Contiguous Parcel shortly after that date, with defendant Lyons Savings taking title to the Contiguous Parcel for the benefit of Zografos. A title commitment and policy issued for purposes of this sale reflected that the Danielses had no interest of any kind in the Contiguous Parcel.

In connection with the sale to Zografos of the Contiguous Parcel, the Jaculas assigned to him their rights under a May 1985 easement agreement (the 1985 easement agreement). This agreement established an easement in favor of the Contiguous Parcel, which otherwise would be landlocked, for ingress and egress from 79th Street over and across the entire 60-foot strip of the Second Parcel. The agreement also gave the Jaculas the right to build a 20-foot-wide road on the 60-foot strip.

In October 1986, Zografos entered a written contract to purchase the Second Parcel from the Andersons. In connection with the sale, a title commitment and policy issued showing Daniels to have no inter-

est in or easement over the Second Parcel. This deal closed on December 19, 1986, 11 days after Daniels recorded the March 1977 contract. Apparently, Daniels recorded the March 1977 contract against the Daniels Property only and not against the Second Parcel.

The instant controversy arose in December 1986 when, in connection with the sale of the Second Parcel to Zografos, Anderson informed Daniels that he would not be permitted to use the gravel driveway which, as noted, rests in part on the 60-foot strip of the Second Parcel. An agreed order was later entered allowing Daniels to use the driveway.

In response to Anderson's threat, Daniels filed the instant action on December 16, 1989. Basically, Daniels sought specific performance of his right of first purchase relative to the Contiguous Parcel, damages against Jacula for breach of the 1977 contract and damages against Zografos for interfering with that contract. Daniels also sought declaratory relief, which would determine his interest in the gravel driveway, and injunctive relief, to prevent Zografos from interfering with that interest. Zografos' counterclaim against Daniels sought a declaration of rights and injunctive relief against Daniels relative to the gravel driveway.

The case came to trial in October 1990, on liability issues only. At trial, the principal testimony concerned the transactional facts related above and whether or not Zografos was a *bona fide* purchaser (BFP) for value of the Contiguous Parcel. The testimony relative to Zografos' notice will be detailed later as necessary.

Upon the trial's completion, the trial court found Daniels' right of first purchase within the 1977 contract to be legally enforceable; that Zografos had actual notice of Daniels' right prior to Zografos' purchase of the Contiguous Parcel and, thus, took title subject to that right; and that Jacula had breached the 1977 contract by selling the Contiguous Parcel to Zografos without first offering it to Daniels. Based on these findings, the court entered a judgment ordering Zografos or his nominee to convey the Contiguous Parcel to Daniels on the same terms and conditions as received, including the rights under the 1985 easement agreement which the Jaculas had assigned to Zografos. The court additionally ordered that Daniels reimburse Zografos at the closing for over $11,000 in real estate taxes which Zografos had paid on the Contiguous Parcel during his ownership.

As for Daniels' rights in the gravel driveway, the court ruled orally that any easement rights which Daniels received under the 1977 contract merged into the deed to the Daniels Property. For reasons not apparent in the record, when Daniels' counsel subsequently

drafted the final judgment now on appeal, this ruling was not incorporated therein.

While accepting Zografos' defense of merger, the court nevertheless found and ordered that Daniels had established a nonexclusive driveway easement by prescription for purposes of ingress and egress. In light of this finding, Zografos' request for declaratory and injunctive relief in his counterclaim was denied.

A determination of Daniels' damages for Jacula's breach of contract was reserved for a later date. A Supreme Court Rule 304(a) finding was included in the final judgment. 134 Ill. 2d R. 304(a).

On appeal, Zografos contends: (1) the court erred in granting Daniels specific performance of the right of first purchase where (a) Zografos was a BFP for value without notice of Daniels' rights under the 1977 contract, (b) Zografos was equitable owner of the Contiguous Parcel under the doctrine of equitable conversion prior to when Zografos received notice of Daniels' right of first purchase, (c) the March 1977 contract granting Daniels a right of first purchase was only binding on the land trustee and not on Jacula, (d) Daniels was not a ready, willing and able buyer, and (e) Daniels is not entitled to protection from a court of equity; (2) the court erred in finding that Daniels' rights under the 1977 contract included easement rights which Jacula had assigned to Zografos in connection with the sale of the Contiguous Parcel; and (3) the court erred in finding that Daniels had established a prescriptive easement to use the driveway to his single-family home.

Daniels' cross-appeal concerns only the propriety of the circuit court ordering him to reimburse Zografos for certain real estate taxes which Zografos paid during his ownership of the Contiguous Parcel.

The first issue we address concerns Zografos' *bona fide* purchaser (BFP) status. A BFP of an interest in property takes that interest free and clear from all claims except those of which he has notice. (*La Salle National Bank v. 850 De Witt Condominium Association* (1991), 211 Ill. App. 3d 712, 718, 570 N.E.2d 606, 611.) " 'Such notice may be actual or constructive and contemplates the existence of circumstances or facts either known to a prospective purchaser or of which he is chargeable with knowledge which imposes upon such purchaser the duty of inquiry.' " *La Salle National Bank*, 211 Ill. App. 3d at 719, 570 N.E.2d at 611, quoting *Burnex Oil Co. v. Floyd* (1969), 106 Ill. App. 2d 16, 21, 245 N.E.2d 539.

Much of the testimony at trial concerned what Zografos knew relative to Daniels' right in the Contiguous Parcel and when. Zografos testified that when he first came to the area looking to purchase some

land in 1977, he met the Danielses and discussed purchasing the Contiguous Parcel. The Danielses were not interested in selling. In subsequent meetings, the Danielses continued to maintain they owned that property and similarly refused to sell. His attempts rejected, in October 1978, Zografos purchased a 20-acre tract of land immediately west of the 10-acre tract involved in this suit. In 1983, while comparing real estate taxes on his and adjacent properties, Zografos discovered, contrary to the Danielses' prior assertions, that the Jaculas were the record owners of the Contiguous Parcel. Zografos contacted Stephen Jacula, and the September 1985 installment contract with the Jaculas was subsequently entered.

During his testimony, Zografos denied all knowledge of Daniels' right of first purchase until he was first informed of such right by Stacey Daniels in June 1986. At that time, the record shows that Zografos was already under the September 1985 contract to purchase the Contiguous Parcel and, in fact, had paid $40,000 of the $60,000 which he owed the Jaculas under the terms of the 1985 contract. Zografos asserts on appeal that, notwithstanding his receipt of notice in June 1986, he is nevertheless a BFP of the Contiguous Parcel because the relevant time at which BFP status is measured is September 1985, when he entered the contract to purchase the Contiguous Parcel, not when he later acquired title to the same in August 1986.

In support, Zografos relies in part on the doctrine of equitable conversion for the proposition that, at the time he entered the September 1985 contract, he was equitable owner of the Contiguous Parcel. Thus, Zografos claims that the June 1986 notice was ineffectual because he already had achieved BFP status under this doctrine.

Apart from the doctrine of equitable conversion, Zografos asserts that the June 1986 notice, as well as any other notice to which the Danielses claim he received, must be considered in light of his history of conversations with the Danielses and Stephen Jacula, who was his personal physician, and the information he learned through searching the public records. At trial, Zografos testified that the Danielses maintained up and through June 1986 that they owned, not had a right or first purchase in, the Contiguous Parcel. However, Stephen Jacula informed Zografos specifically at the closing of the Contiguous Parcel that he and his wife owned that property with the Danielses having *no* interest therein. Further, Zografos' own title search revealed the Jaculas to be owners of the Contiguous Parcel with the Danielses having no recorded rights in that property. Also, the title commitment and subsequent policy issued in connection with the Contiguous Parcel's sale revealed no interest in the Danielses. Zografos

asserts that, accordingly, because the Danielses' June 1986 claim of ownership conflicted with what they had told him previously, and because the recorded owner (the Jaculas) and the public records demonstrated the Danielses' claim to be patently false, he was justified in giving little attention to the Danielses' claim to a right of first purchase.

Daniels responds to Zografos' equitable conversion argument by asserting that Zografos has waived review of this argument. Daniels asserts that in no pleading, argument before the trial court or post-trial motion did Zografos assert this argument. Accordingly, relying on cases like *Jackson v. Chicago Board of Education* (1989), 192 Ill. App. 3d 1093, 1099, 549 N.E.2d 829, 832, which hold that defenses not raised in the trial court are waived, Daniels asserts that Zografos is not entitled to raise this argument for the first time on appeal.

Regarding Zografos' evidence relative to notice, Daniels asserts that Zografos fails on appeal to consider *all* the evidence presented to the trial court on this issue. For example, Stacey Daniels testified that in May 1979 she walked with Zografos on the Daniels Property and informed him that the Danielses had a right of first purchase on the Contiguous Parcel and easement rights in the driveway. Zografos denies this meeting ever took place.

Apart from the 1979 conversation, the Danielses both testified that, in early fall 1985, at a meeting at the Danielses' home, Zografos was informed again of their first purchase and easement rights. At this meeting, Zografos was interested in including the Contiguous Parcel in development plans he had for adjacent properties. The Danielses testified they told Zografos that they were not interested in having that property so included. During this meeting, Zografos never stated that two months earlier, he had in fact entered a contract with the Jaculas to purchase the Contiguous Parcel. Also, because Zografos never questioned Daniels' right of first purchase during this meeting, the Danielses never gave Zografos a copy of the March 1977 contract containing the right of first purchase. Daniels testified that it was not until December 1986, when another meeting was held between Zografos, Daniels and Anderson, that he first learned of Zografos' ownership of the Contiguous Parcel. Daniels immediately thereafter tendered a copy of the 1977 contract and filed suit. The Danielses denied ever telling Zografos that they owned the Contiguous Parcel; rather, they consistently expressed to him that they had only a right of first purchase.

Zografos' response at trial to the Danielses' testimony regarding the fall 1985 meeting was that it occurred in 1986, not 1985. He also

testified that he never informed the Danielses at either meeting of his then-existing installment contract because he did not want to "embarrass" them. In any event, Zografos asserts that, even if the fall 1985 meeting occurred when the Danielses testified, he was already a BFP, having made a $10,000 payment towards purchasing the Contiguous Parcel and giving a judgment note for the balance.

In finding that Zografos was not a BFP, the circuit court relied solely upon the June 1986 notice to Zografos. The court made no factual finding relative to Zografos' notice of Daniels' rights apart from Zografos' admitted receipt of the June 1986 notice.

We believe the critical inquiry on appeal is when during the executory stages of a real estate installment contract does the vendee become a BFP. Relying on the doctrine of equitable conversion, Zografos asserts that the proper time is when the vendee enters a contract to purchase.

■ We agree with Daniels' assertion that Zografos has waived application of the doctrine in this case. The doctrine of equitable conversion posits that a buyer becomes equitable owner of the property upon entering an enforceable contract for sale. See *Shay v. Penrose* (1962), 25 Ill. 2d 447, 185 N.E.2d 218.

Our examination of the record reflects that Zografos raises this argument for the first time on appeal. One of the purposes of the waiver rule—to allow the adversative process an opportunity to fully develop an issue below—would be particularly frustrated here because Daniels has been denied a full opportunity to contest application of the doctrine. Zografos asserts that, because substantial evidence was directed towards establishing what he knew and when, the doctrine was obviously raised below. We find unpersuasive Zografos' characterization of why such evidence was received. Zografos' advancement of the doctrine constitutes a new theory of defense which he never raised below. Accordingly, Zografos has waived application of this doctrine.

■ Although we determine that Zografos cannot rely upon equitable conversion to establish BFP status, we nevertheless remained confronted by the issue of when during the executory stages on a real estate installment contract does the vendee become a BFP. On this issue, 77 American Jurisprudence *Vendor and Purchaser* §652 (2d ed. 1975), states:

"§652—Notice received before acquisition of legal title.

The interest of a purchaser of real estate before a conveyance is a mere equitable interest, and is not sufficient to afford the purchaser protection against an earlier equal equity. More-

over, it is held in many cases that whatever a vendee who holds a mere equitable interest does to perfect his title after notice does not entitle him to protection as a bona fide purchaser, that the holder of a junior equitable interest who has knowledge of a superior equitable interest does not, by acquiring the legal title, cut off the outstanding equitable interest, and that although the purchaser may have made his contract to purchase and paid the purchase money before he has notice of the outstanding equity, yet if he receives notice before his own equity is clothed with the legal title, he takes subject to the prior equity."

92 Corpus Juris Secundum *Vendor & Purchaser* §323(d) (1955) similarly states:

"(1) In General

\* \* \*

Actual payment of the consideration, or something equivalent, such as, that the purchaser has divested himself of some legal right, or has been induced so to change his condition that deprivation of legal title would work an injustice on the purchaser, is in general necessary to the character of a bona fide purchaser for a valuable consideration \* \* \*. Payment of a part of the consideration is insufficient to render the purchaser a bona fide purchaser for value \* \* \*. \* \* \*

(2) Giving Security or Payment by Note or Other Obligation
\* \* \*

As a general rule, the giving of a mortgage or other security for the payment of the purchase price, or, although there is authority to the contrary, even the giving of negotiable notes, will not be sufficient to entitle one to the rights of a bona fide purchaser, unless the parties are so circumstanced that a court of equity cannot prevent the enforcement of such security or notes, as where they have been negotiated and transferred into the hands of an innocent purchaser for value."

See also 92 C.J.S. *Vendor & Purchaser* §322(a)(2) (1955) ("One claiming under an executory contract or option to purchase land, but who has not paid the purchase money in full, is not a bona fide purchaser, although on performance he may be protected as such").

Another authority worth reviewing is 3 S. Symons, Pomeroy's Equity Jurisprudence §§750, 751, 755 (5th ed. 1941):

"§750. 2. Payment of the Consideration—Effect of Part Payment.—Not only must there be a valuable consideration in fact, but it must be paid before notice of the prior claim. Notice after the agreement for the purchase is made, but before any

payment, will destroy the character of *bona fide* purchaser. The rule is settled in England that the entire price or consideration must have been paid before any notice, and the same completeness of payment is required by some American decisions (see §755). Since the modes of transferring and dealing with real property in this country are so different from those which prevail in England, the same equitable principles which guided the English judges have led the courts in many of the states, under a change of circumstances, to adopt a necessary modification of this rule; otherwise great injustices might be wrought. These courts have held that where a part only of the price or consideration has been paid before notice, either the defendant should be entitled to the position and protection of a *bona fide* purchaser *pro tanto*; or that the plaintiff should be permitted to enforce his claim to the whole land only upon condition of his doing equity by refunding to the defendant the amount already paid before receiving the notice; or even, when the plaintiff has been guilty of laches, or the defendant has perhaps made valuable improvements, that the land itself should remain free from any claim on the plaintiff's part, and his remedy should be confined to a recovery of the portion of purchase-money which was still unpaid when notice was given. \*\*\*

\*\*\*

§751.—Payment must be actual.—It is further settled that there must be *actual payment* before any notice, or, what in law is tantamount to actual payment, a transfer of property or things in action, or an absolute change of the purchaser's legal position for the worse, or the assumption by him of some new, irrevocable legal obligation. It follows, therefore, that his own promise, contract, bond, covenant, bond and mortgage, or other non-negotiable security for the price, will not render the party a *bona fide* purchaser, nor entitle him to protection; for upon failure of the consideration he can be relieved from such obligation in equity even if not at law. Payment of actual cash, however, is not indispensable. The assumption of an irrevocable obligation, from which the purchaser could not be relieved even by a failure of the consideration arising from the title being invalid, may be sufficient.

\* \* \*

§755. 2. Time of giving Notice; English and American Rules.—We have seen (§753) [not relevant here] that if notice is not given until after the purchaser has fully paid the consider-

ation, received a conveyance, and completed his title, he is not in the least affected by it. If the notice is given before any or all of these steps have been taken, its consequences may be different, and are to be considered. The general rule is settled in England that a *bona fide* purchase requires both the payment of all the price and the execution and delivery of the conveyance before the receipt of notice by the purchaser. In other words, if the party has received the conveyance before notice and paid the price after, or has paid the price before and received the conveyance after, in either instance the *bona fides* of the purchaser is destroyed. The American decisions are all agreed that a notice received before any of the purchase price has been paid, as well after the deed of conveyance has been delivered as before, will destroy the *bona fides* of the purchase (see §750), and many of the decisions, following the English rule, attribute the same effect to a notice after a payment of part, but before the whole is paid. Such a payment is, by some authorities, a protection *pro tanto* (see §750)."

Illinois' treatment of the issue of when during the executory stages of an installment contract does BFP status attach appears to be more like the equitable approach expressed in Pomeroy than the strict approach espoused by American Jurisprudence or Corpus Juris Secundum. Early cases decided by the Illinois Supreme Court appear, however, to be in accord with one of the premises of the above authorities, namely, that actual payment of consideration is required to establish BFP status:

"It seems to be settled that where land is purchased from one not owning it and purchaser claims to be a *bona fide* purchaser for value without notice, it is incumbent upon such purchaser to show not only that he had a conveyance for the land but that he actually paid it. It is not sufficient that he may have secured the payment of the purchase price." *Greer v. Carter Oil Co.* (1940), 373 Ill. 168, 173, 25 N.E.2d 805, 808.

Accord *Moshier v. Knox College* (1863), 32 Ill. 155; *Brown v. Welsh* (1857), 18 Ill. 343.

These Illinois cases, however, do not address the situation where, as here, *actual payment in part* has been made prior to the receipt of actual notice. In the cases cited above, the purchaser had paid nothing towards the purchase price. Thus, the cases are arguably distinguishable from what transpired here.

The only case we have found which addresses the partial payment scenario is *Baldwin v. Sager* (1873), 70 Ill. 503. In *Baldwin*, the sim-

plified facts revealed the purchaser to have received notice of plaintiff's outstanding rights after receiving a deed to the property, paying one-half of the purchase price and giving negotiable notes for the balance. The public records revealed absolute title to be in the purchaser's vendor, but the plaintiff asserted that his assignment of a second mortgage to the vendor, which appeared in the public records to be absolute on its face, was, in fact, only a pledge given to the vendor to secure a debt which the plaintiff owed the vendor. Plaintiff sued to establish a mortgage on the land.

The court stated its review of the applicable law as follows:

"The question is, shall appellee [plaintiff] be permitted to make a transfer of his mortgage, absolute and unconditional in form, which is recorded and relied upon by a purchaser, as extinguishing his claim and lien upon the land—be permitted to subsequently set up a secret understanding that his transfer was only a pledge—and thus deprive the purchaser of his payment on the purchase? And may he thus assert his rights, against the purchaser, for the balance, although he may have given his negotiable notes, which may have been assigned, and the purchaser be compelled to pay them, and thus lose both the purchase money and the land? The English cases seem to hold that he may, but in this country the current of the authorities does not hold the rule in so broad a sense. The doctrine seems to be well settled that, although the purchase money may not be paid at the time the vendee receives a conveyance, still it will be sufficient if it be paid before notice. [Citation.] But it has been repeatedly held that payment of a part of the purchase money, although not sufficient to invest the purchaser with the character of a *bona fide* purchaser as regards the estate purchased, does give him the right to invoke the aid of the equitable principle, that he who claims equity must do equity, and require reimbursement, from the rightful owner, of all moneys paid before notice, as a condition to granting the first purchaser or incumbrancer relief. [Citations.] The same court also holds that the expenditures of money on the premises, in their improvement by the purchaser, when no portion of the purchase money has been paid, if done before notice, entitled the vendee to the same rights. [Citation.] And it seems that protection will be given, in some form, for all payments and improvements made before notice, although payment in full may be required to constitute a good bar by plea to the bill. [Cita-

tions.] Notes on bills on third persons, paid, are equivalent, in most cases, to actual payment.

In the case of *Freeman v. Deming*, 3 Sandf. Ch. 327, it was held that where notes are given by the purchaser, and they are negotiated before notice, so as to render the vendee liable at all events, that will be treated as a payment. Whilst cases are found, in the courts of this country, which hold that, unless all the purchase money is paid before notice, equity will not afford any protection, we think the former cases announce a rule more consonant with the principles of equity." 70 Ill. at 506-07.

The court in *Baldwin* ultimately refused to disturb the purchaser's title. However, it did so not on the premise that the purchaser was a BFP, but because it was *not* necessary to disturb the sale in order to fully protect plaintiff's rights. Rather, plaintiff could look to the note payments to obtain repayment of the monies which his second mortgage secured.

■ Turning to the facts of this case, we affirm the circuit court's finding that Zografos had actual notice of Daniels' right of first purchase prior to Zografos' becoming a BFP of the Contiguous Parcel. In June 1986, Zografos admits receiving actual notice from Stacey Daniels that the Danielses had a right of first purchase in the Contiguous Parcel. At this time, while Zografos had signed a contract with the Jaculas, paid $10,000 to the Jaculas upon signing, and paid two $15,000 installments pursuant to a judgment note given to secure the balance due, Zografos is not entitled to BFP status. Zografos had merely parted with money at this point in time, and the judgment note he gave to the Jaculas had not been negotiated. Other than Zografos' payment of real estate taxes, the reimbursement of which we later affirm, no evidence exists that Zografos had otherwise prejudiced himself in the purchase.

Under our interpretation of Illinois law, the rule of BFP's must be flexible to accommodate the competing interests of the installment sale purchaser, who receives notice before making full payment, and the party claiming a superior, earlier equity. Here, both Zografos and Daniels make utterly conflicting claims to the same piece of property; both claim the right to own. If Daniels' claim to the property could be satisfied without disturbing Zografos' purchase, then we could allow Zografos to remain in title. *Baldwin* would suggest such a course of conduct. However, Zografos' rights cannot be protected without the complete sacrifice of Daniels' and vice versa. Thus, the circuit court properly required Zografos to convey title to the Danielses, with Daniels paying Zografos the purchase price. Zografos accordingly is reim-

bursed the money paid to the Jaculas, and the principles of equity are satisfied to the greatest degree possible. For these reasons, as between Daniels and Zografos, Daniels' claim to the Contiguous Parcel must prevail. Zografos' remedy, if any, for damages sustained, rests against Jacula, his seller.

■ Given our affirmation of Daniels' right of first purchase, we must next address what this right includes. On appeal, Zografos alleges that Daniels was not entitled to the easement of ingress and egress to the Contiguous Parcel (the 1985 easement agreement), which Jacula assigned to Zografos in connection with Zografos' purchase of that parcel. We disagree.

A trial court has broad discretion to fashion equitable orders to remedy a wrong. (See *Millard Maintenance Service Co. v. Bernero* (1990), 207 Ill. App. 3d 736, 566 N.E.2d 379; *Tie Systems, Inc. v. Telecom Midwest, Inc.* (1990), 203 Ill. App. 3d 142, 560 N.E.2d 1080.) Here, the right of first purchase provided that Daniels received "the first right to purchase (*on the same terms and conditions*, and for the same price, as any bona-fide offer in writing made to seller) a tract of land approximately two acres in area, being that piece adjacent to the [Daniels Property]." (Emphasis added.) We believe the circuit court could, in honoring the intentions of the parties to the original March 1977 contract, properly grant Daniels the 1985 easement agreement for ingress and egress to the Contiguous Parcel, where the parcel would be otherwise landlocked and Zografos received these rights as part of his contract with the Jaculas. Zografos fails to persuasively show how the circuit court abused its discretion in granting Daniels that which Zografos received from the Jaculas.

We next address Zografos' assertion that only the Cicero State Bank, and not Jacula, was bound by the right of first purchase within the rider to the March 1977 contract. Plaintiff's exhibit 15, which is the March 1977 contract, consists of a standard-form contract and a two-page rider. On the first page of the form contract, "Cicero State Bank as Trustee Under Trust No. 2615" is designated as the "(Seller)." This page bears a stamp of the Cicero State Bank in conjunction with and nearby the other signatures on this page, which include Stephen Jacula and James R. Anderson. Significantly, Jacula's and Anderson's signatures also appear on the line designated "Seller." The first two pages of the form contract refer to the "Rider Attached" on seven different occasions. The second page of the rider, which contains the right of first purchase, is signed by an officer of the Cicero State Bank as "Seller," Anderson and *Steven* (not Stephen)

Jacula. As previously noted, in 1979, the Jaculas took title to the Contiguous Parcel, and trust number 2615 ceased to exist.

■ We believe the circuit court correctly determined that Jacula was individually bound by the right of first purchase. The circuit court found that the standard form contract and two-page rider should be read as one document. As Zografos does not separately appeal this conclusion, we accept it as true. Consequently, whether or not Stephen Jacula in fact signed the rider containing the right of first purchase is a moot issue. His signature appears on the first page of the contract, and the parties never disputed this fact. Given the contract's numerous references to the rider in question, we agree that Stephen Jacula consented to the terms of the rider.

We further agree that Stephen Jacula was bound individually by the right of first purchase. He signed this contract as both a "beneficiary" on the rider and as a "Seller" on page one. Thus, the contract on its face bound Stephen Jacula to the terms of the right of first purchase, which, by its own terms, was obligatory on "Seller."

■ Finally, we reject Zografos' assertion that, when Mrs. Jacula took title to the Contiguous Parcel with her husband, Daniels' right of first purchase was extinguished. Jacula could properly bind himself to offer a right of first purchase to Daniels when he owned the Contiguous Parcel, and the fact that the Jaculas took title jointly at some subsequent date did not terminate that obligation.

■ We next address Zografos' claim that Daniels failed to prove himself to be a ready, willing and able purchaser of the Contiguous Parcel. (See *Arnold v. Leahy Home Building Co.* (1981), 95 Ill. App. 3d 501, 420 N.E.2d 699 (reciting elements of specific performance).) The record shows that Zografos contracted to purchase the Contiguous Parcel in September 1985 for $10,000 down, with the $50,000 contractual balance due under the terms of a judgment note. Zografos made near-equal payments on this note, taking title in August 1986, after making a final $20,000 payment at closing. Zografos asserts on appeal that Daniels failed to establish at trial that he had $60,000 available in September 1985 to purchase the property.

Daniels testified that he had over $300,000 of equity in his home at the time Zografos contracted to purchase the property. While Daniels never testified that he had $60,000 cash immediately available to him in September 1985, his testimony regarding the amount of equity in his home established his ability to purchase the Contiguous Parcel. This testimony clearly placed the issue of granting specific performance within the court's discretion. Accordingly, we cannot agree that

Daniels failed to establish that he was a ready, willing and able buyer of the Contiguous Parcel in September 1985.

■■ We next reject Zografos' assertion that Daniels was not entitled to specific performance because of his failure to act like a reasonable property owner by not recording his right to first purchase. Admittedly, at a minimum, Daniels' conduct in this case can be categorized as unwise. Failing to record a right of first purchase subjects that right to the risk of forfeiture where a BFP purchases the restricted property for value without notice. Indeed, such result almost occurred here.

However, Daniels testified he had no notice of Zografos' purchase of the Contiguous Parcel until Anderson told him in December 1986 that he could no longer use the driveway. Upon learning this fact, Daniels immediately filed suit. Also, Daniels denied Zografos' testimony that he concealed the right of first purchase or misrepresented to Zografos that he owned the property. In the end, whether Daniels was entitled to specific performance rested in the sound discretion of the court based upon all the surrounding facts and circumstances. (*Fitzpatrick v. Allied Contracting Co.* (1962), 24 Ill. 2d 448, 182 N.E.2d 183.) On appeal, Zografos fails to show an abuse of discretion.

We note that the final judgment under appeal omitted the restriction within the 1977 contract that "said right [of first purchase] shall be personal to Purchaser, shall not run with the land and shall terminate upon any transfer of title by Purchaser other than a transfer resulting in ownership by Purchaser and his then spouse as joint tenants." Under the doctrine of merger, "by a judgment at law or a decree in chancery, the contract or instrument upon which the proceeding is based becomes entirely merged in the judgment. By the judgment of the court it loses all of its vitality and ceases to bind the parties to its execution." (*Doerr v. Schmitt* (1941), 375 Ill. 470, 472, 31 N.E.2d 971, 972; accord *Stein v. Spainhour* (1990), 196 Ill. App. 3d 65, 553 N.E.2d 73.) Had Zografos wished to keep this restriction, he should have inserted it in the judgment under review. Having failed to so insert it, the restriction ceased to exist.

We next address whether the circuit court properly granted Daniels a prescriptive easement in the gravel driveway. To be entitled to a prescriptive easement, Daniels had to show his use or the use by a predecessor in interest of the easement property in an adverse, exclusive, continuous, and uninterrupted manner under a claim of right for a period of at least 20 years. (*Healy v. Roberts* (1982), 109 Ill. App. 3d 577, 440 N.E.2d 647.) The establishment of an easement by prescription is a question of fact, especially as to whether a use is adverse or

permissive. *Schultz v. Kant* (1986), 148 Ill. App. 3d 565, 499 N.E.2d 131.

■ We find that Daniels established no prescriptive easement as a matter of law where he failed to establish that he met the 20-year period. To support his argument that he satisfied his burden of proof on this element, Daniels asserts that his use of the driveway, which began in 1977, can be tacked onto the prior owner's use of the driveway. This argument must fail, however, because the Daniels Property, the Contiguous Parcel and the Second Parcel were all one piece of property under a single owner prior to 1976, when Anderson, Jacula and the Cicero State Bank acquired ownership. To be sure, these parcels were singularly owned by Anderson and Jacula as beneficiaries prior to the Danielses' purchase of the Daniels Property.

It is axiomatic that a landowner cannot have an easement on his own property. An appurtenant easement by definition requires at least two parcels under different ownership; otherwise, there can be no dominant and servient tenement. (Black's Law Dictionary 457 (5th ed. 1979).) Here, Daniels would have had to use the driveway until 1997, 10 years after his use commenced, to establish an easement by prescription. He has not and, accordingly, he cannot establish an easement by prescription. We, therefore, reverse that portion of the circuit court's judgment finding an easement by prescription.

Our determination on the prescriptive easement issue does not terminate our analysis of Daniels' right to use the driveway. At trial, Daniels sought to establish an easement by contract. Zografos asserted the affirmative defense of merger, contending that any contractual easement rights merged into the subsequently issued Daniels Property deed. Following trial, and contrary to Daniels' assertions in his brief, the court accepted Zografos' merger defense, orally ruling that a merger had occurred. When Daniels' counsel subsequently drafted the final order now on appeal, the order was silent on the issue of Daniels' easement by contract. This too is contrary to Daniels' representations on appeal.

On appeal, Daniels assumes in his brief that he received an easement by grant, and he asserts that Zografos does not contest this award in his initial brief. Zografos responds with citation to the trial court's oral ruling, and asserts, in conjunction with his prescriptive easement argument, that the Danielses have no rights to use the driveway whatsoever. Accordingly, Zografos asserts that the circuit court erred in denying the relief he sought in his counterclaim.

We believe that Zografos' notice of appeal allows us to directly review whether the court properly found that the defense of merger

barred Daniels' contractual easement rights under the 1977 contract. Zografos' notice of appeal directly requests this court to reverse that portion of the judgment denying him relief under his counterclaim. Because Zografos' counterclaim sought declaratory and injunctive relief relative to Daniels' use of the driveway, our authority to review the circuit court's oral merger finding is directly triggered.

We determine that the court erred in finding that the doctrine of merger barred Daniels' contractual easement rights. The principles of merger have been well stated (e.g., Harris Trust & Savings Bank v. Chicago Title & Trust Co. (1980), 84 Ill. App. 3d 280, 405 N.E.2d 411), and we will not repeat them in their entirety. Suffice it to say that "if there are provisions in the contract which delivery of the deed does not fulfill, then the contract is not merged in the deed as to such provision and the contract remains open for the performance of such terms." (Harris Trust & Savings Bank, 84 Ill. App. 3d at 283, 405 N.E.2d at 414.) In Harris, after reviewing numerous cases addressing the issue, the court found that a contractual promise to grant an easement did not merge into a subsequently issued deed.

■■■ We find Harris persuasive authority that the contractual easement rights in the March 1977 contract did not merge into the subsequently issued deed. The language of grant here provided: "Seller shall grant Purchaser a non-exclusive easement, to run with the land for ingress and egress over that portion of such 66 foot strip contiguous to this parcel." The contractual language in Harris provided: "Sellers agree to include in the within purchase price a permanent easement 66 ft. wide, running from the herein described parcel westerly to ***." (Harris Trust & Savings Bank, 84 Ill. App. 3d at 282, 405 N.E.2d at 413.) As with the easement in Harris, the Danielses' driveway easement could not take effect until the Danielses accepted the deed to the Daniels Property and title passed. Prior to this time, only one 10-acre parcel existed. We accordingly find that the defense of merger did not bar Daniels' contractual easement.

In light of our rejection of the defense of merger, we are faced with remanding to the circuit court for it to address the merits of Daniels' claim to a contractual easement or awarding that contractual easement outright to Daniels under our appellate authority. (See 134 Ill. 2d R. 366(a)(5).) For purposes of judicial economy, we elect the latter course.

It cannot be readily disputed that Zografos purchased the Second Parcel with notice of Daniels' rights in the driveway. The Danielses had used this driveway since they purchased the Daniels Property. Possession imparts constructive notice. (R. Kratovil & R. Werner,

Real Estate Law, ch. 9.07 (9th ed. 1988).) Moreover, Zografos testified that he learned prior to the Second Parcel's close that Daniels was claiming an easement to use the gravel driveway. Accordingly, we award Daniels a contractual easement, nonexclusive in nature, to run with the land for ingress and egress purposes, over the 60-foot strip of the Second Parcel.

The final matter we address concerns Daniels' cross-appeal, which half-heartedly contends that the circuit court erred in requiring him to reimburse Zografos for Zografos' payment of real estate taxes for the years when Zografos owned the Contiguous Parcel. We disagree.

Daniels correctly asserts that Zografos never formally sought in his counterclaim reimbursement from Daniels of real estate taxes he may have paid while he owned the property. However, as noted, a trial court has broad discretion in formulating equitable relief to remedy a wrong. Moreover, as noted, the rule of BFP's must be flexible to accommodate parties like Zografos.

Here, this case would never have existed if Daniels would have merely recorded his right of first purchase. In its discretion, the court could have concluded that Zografos was entitled to credit for payment of taxes as a matter of equity between the parties. Given the contemporaneous nature of this suit with Zografos' ownership of the Contiguous Parcel, it cannot be said that Zografos had full enjoyment of the parcel. Daniels fails to show an abuse of this discretion. Accordingly, we affirm the award of real estate taxes to Zografos.

In summary, we affirm the November 19, 1990, judgment of the circuit court of Cook County in all respects, except we vacate paragraph 2, which found an easement by prescription in favor of Daniels. We find, however, that the defense of merger did not defeat Daniels' contractual easement under the 1977 contract. For the reasons previously set forth herein, we award Daniels a contractual easement, nonexclusive in nature, to run with the Daniels Property, for ingress and egress purposes, over the 60-foot strip of the Second Parcel.

Affirmed as modified; vacated in part.

MANNING, P.J., and CAMPBELL, J., concur.