(No. 76374.—

WILLIAM L. DANIELS, Appellee, v. JAMES ANDERSON *et al.,* Appellants.

*Opinion filed September 22, 1994.*

48

Leon Zelechowski and Karen T. Moses, of Chicago (Kevin M. Forde, of counsel), for appellants Nicholas Zografos *et al.*

Stephen D. Libowsky and Mark L. Johnson, of Katten, Muchin & Zavis, of Chicago, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, William L. Daniels, brought an action in the circuit court of Cook County against several defendants, including James Anderson, the estate of Stephen Jacula, and Nicholas Zografos. Daniels sought, *inter alia*, the specific performance of a real estate sales contract. Following a bench trial, the trial court entered judgment in favor of Daniels. The appellate court affirmed. (252 Ill. App. 3d 289.) We allowed Zografos' petition for leave to appeal (134 Ill. 2d R. 315(a)), and now affirm the appellate court, with a minor modification.

## BACKGROUND

The appellate court detailed the facts of this case. We repeat only those facts that are necessary for our disposition of the issues presented in this appeal.

### The Properties

In March 1977, Anderson and Jacula owned a 10-acre tract of real estate in what is now Burr Ridge. The property is divided into four lots. (See appendix.) Two of the four lots (the Daniels Property) are situated side-by-side, east and west, and face the south side of 79th Street at 11445 79th Street. Each lot is an acre. A single-family home was moved onto the western lot around 1950.

The third lot (the Contiguous Parcel) lies directly south of the Daniels Property. In other words, the south boundary of the Daniels Property is also the north boundary of the Contiguous Parcel. The Contiguous Parcel consists of approximately two acres and is vacant and landlocked.

The fourth lot (the Second Parcel) consists of approximately six acres of vacant land, most of which lies directly south of the Contiguous Parcel. A portion of the Second Parcel extends northward in a 60-foot-wide strip directly west and adjacent to the Contiguous Parcel and the Daniels Property until the strip reaches 79th Street. The strip provides the body of the Second Parcel, with the Contiguous Parcel and the Daniels Property, access to 79th Street.

A gravel driveway lies on a small section of the Second Parcel's strip. The 11-foot-wide driveway begins on the strip at 79th Street and runs southeast on the strip for approximately 60 feet and then enters the Daniels Property. The driveway has always served as the ingress to and egress from the single-family home on the Daniels Property.

### The Transactions

In March 1977, Daniels contracted with Anderson and Jacula to buy the Daniels Property. The written contract consisted of a preprinted form and a rider, which provided in pertinent part:

> "Seller shall file a new subdivision which will establish the subject premises as a separate parcel. Such new

subdivision plat shall also provide a 66 foot strip [subsequently changed to a 60-foot-wide strip] connecting the South 5 acres of said East 10 acres with 79th Street for sole purposes of ingress and egress. Seller shall grant Purchaser [Daniels] a non-exclusive easement, to run with the land for ingress and egress over that portion of such [60] foot strip contiguous to this parcel."

The rider also provided:

"*Right to Purchase Additional Land.* Seller agrees that he shall grant Purchaser the first right to purchase (on the same terms and conditions, and for the same price, as any bona-fide offer in writing made to Seller) a tract of land approximately two acres in area [the Contiguous Parcel], being that piece adjacent to [the Daniels Property] ***. Said right shall be personal to Purchaser, shall not run with the land and shall terminate upon any transfer of title by Purchaser other than a transfer resulting in ownership by Purchaser and his then spouse as joint tenants."

Daniels and his wife moved into the single-family home on the Daniels Property when they entered into the 1977 sales contract. In March 1979, the Daniels Property closed and the Danielses received a deed. This deed did not mention Daniels' easement or his right of first refusal of the Contiguous Parcel. Daniels did not record the 1977 sales contract at this time.

In June 1979, Jacula and his wife acquired sole ownership of the Contiguous Parcel and Anderson and his wife acquired sole ownership of the Second Parcel. Under a May 1985 easement agreement, the Jaculas acquired an easement in favor of the otherwise landlocked Contiguous Parcel for access to 79th Street. The easement covered the entire 60-foot-wide strip of the Second Parcel. The 1985 easement also gave the Jaculas the right to build a 20-foot-wide road on the strip.

In September 1985, Zografos contracted with the Jaculas to buy the Contiguous Parcel for $60,000. Daniels never received an offer to buy the Contiguous Parcel. Since Daniels had not recorded the 1977 contract

by this time, a title search for this sale to Zografos reflected that Daniels did not have any interest in the Contiguous Parcel. Pursuant to the 1985 contract, Zografos paid the Jaculas $10,000 initially and delivered to them a judgment note on the balance. On February 18, 1986, Zografos paid $15,000 and, on March 22, he paid another $15,000. At the closing on August 22, Zografos paid the remaining $20,000. Shortly after that date, Zografos recorded a warranty deed to the Contiguous Parcel. Zografos also received from the Jaculas their rights under the 1985 easement agreement.

In October 1986, Zografos contracted with the Andersons to buy the Second Parcel. A title search for this sale reflected that Daniels did not have any interest in or easement over the Second Parcel. The sale of the Second Parcel closed on December 19, 1986. Daniels recorded the 1977 sales contract 11 days prior to this closing.

In December 1986, Anderson told Daniels that he could no longer use the gravel driveway that lies partly on the Second Parcel's 60-foot-wide strip. We note that the trial court subsequently entered an agreed order allowing Daniels to use the driveway.

The Proceedings

Daniels brought this action in December 1989. Daniels sought the specific performance of his right of first refusal of the Contiguous Parcel. Daniels also sought damages from Jacula for breaching the 1977 contract and damages from Zografos for interfering with that contract. Daniels also sought a declaration granting him an easement in the gravel driveway, based on the 1977 contract, and an injunction preventing Zografos from interfering with that easement.

Zografos counterclaimed against Daniels. Zografos sought a declaration, based on the affirmative defense of merger, that Daniels did not have an easement over

that part of the Second Parcel on which lies the driveway to the Daniels home. Zografos also sought an injunction preventing Daniels from using any part of the Second Parcel as a driveway.

At the close of a hearing, the trial court found as follows. Daniels' right of first refusal of the Contiguous Parcel, as provided by the 1977 sales contract, was legally enforceable. Zografos had actual notice of Daniels' right prior to Zografos' purchase of that parcel. Therefore, Zografos was not a *bona fide* purchaser of the Contiguous Parcel and he took title thereto subject to Daniels' right. Also, Jacula breached the 1977 sales contract by selling the Contiguous Parcel to Zografos without first offering it to Daniels.

Based on these findings, the trial court entered a judgment that provided as follows. Zografos was ordered to convey the Contiguous Parcel to Daniels on the same terms and conditions as Zografos received the property, including the easement rights that he received from the Jaculas. Daniels was ordered to pay Zografos the full purchase price and reimburse him for approximately $11,000 in property taxes that Zografos had paid on the Contiguous Parcel during his ownership.

The trial court also ruled against Zografos' counterclaim against Daniels regarding the gravel driveway. The court found that Daniels did not have a driveway easement based on the 1977 sales contract because the contract merged into the deed to the Daniels Property. However, the court found that Daniels had established a nonexclusive driveway easement by prescription for ingress to and egress from the Daniels home.

The appellate court affirmed the trial court's judgment in all material respects. (252 Ill. App. 3d 289.) However, the appellate court disagreed with the trial court's finding that Daniels had established an easement by prescription. Rather, the appellate court held that

Daniels was entitled to an easement based on the 1977 contract. (252 Ill. App. 3d at 307-10.) We will refer to additional pertinent facts as they relate to the issues Zografos raises before this court.

## DISCUSSION

Zografos presents three issues in this appeal. He contends: (1) he was a *bona fide* purchaser of the Contiguous Parcel; (2) the trial court's award of the Contiguous Parcel to Daniels should not have included the easement that Zografos received from the Jaculas; and (3) Daniels had no easement rights under the 1977 contract.

In discussing these issues, we remember that the historic function of a court of equity is to administer remedial justice. The sound discretion of the court is the controlling guide. Of course, the trial court's discretion must not be arbitrary. Rather, the court must exercise its discretion in accordance with the fixed principles and precedents of equity jurisprudence. *Shatz v. Paul* (1955), 7 Ill. App. 2d 223, 233-34; accord 1 S. Symons, Pomeroy's Equity Jurisprudence §§ 47, 59 (5th ed. 1941).

### I. *Bona Fide* Purchaser Defense

Daniels sought, *inter alia*, the specific performance of his right of first refusal of the Contiguous Parcel. Specific performance refers to the very (hence specific) thing required by a contract. This equitable remedy stands in contrast to the remedy at law, which is the payment of money as a substitute for performance. Specific performance is based on the desire to do more perfect and complete justice, which the remedy at law would fail to give. Further, specific performance is generally not available as a matter of right. Again, the remedy rests in the sound discretion of the trial court, based on all of the facts and circumstances in evidence. *Rothner v. Mermelstein* (1991), 219 Ill. App. 3d 502, 507 (and authorities cited therein).

A contractual right of first refusal is a valuable prerogative. A landowner is under a duty not to sell to any third person without first offering the land to the promisee. The promisee has an enforceable right to such forbearance. (11 W. Jaeger, Williston on Contracts § 1441A, at 949-50 (3d ed. 1968); 5A A. Corbin, Corbin on Contracts § 1197, at 377 (1964).) If the owner offers or accepts an offer to sell the land to a third person, thereby breaching the contract, the promisee may obtain specific performance. This would compel the owner to convey to the promisee on the same terms as with the third person, "*as long as there is no contract with an innocent purchaser.*" (Emphasis added.) 5A A. Corbin, Corbin on Contracts § 1197, at 377-78 (1964).

Zografos raises the defense that he was an innocent, or *bona fide*, purchaser. A *bona fide* purchaser is a person who takes title to real property in good faith for value without notice of outstanding rights or interests of others. A *bona fide* purchaser takes such title free of any interests of third persons, except such interests of which he has notice. *Guel v. Bullock* (1984), 127 Ill. App. 3d 36, 42; *Kovacevic v. City of Chicago* (1977), 47 Ill. App. 3d 674, 678; accord 8 J. Grimes, Thompson on Real Property § 4312 (1963).

Zografos testified that he did not know of Daniels' right of first refusal until Daniels' wife told him in June 1986. By that time, Zografos had already contracted to buy the Contiguous Parcel and had paid $40,000 of the $60,000 purchase price. The trial court found that Zografos was not a *bona fide* purchaser based solely on this June 1986 notice.

In the appellate court, Zografos contended that he was a *bona fide* purchaser of the Contiguous Parcel despite his June 1986 notice of Daniels' interest. Zografos invoked the doctrine of equitable conversion in support of his *bona fide* purchaser defense. He argued that al-

though he did not take legal title to the Contiguous Parcel until August 1986, he became the equitable owner of the Contiguous Parcel in September 1985, when he entered into the contract. (See *Shay v. Penrose* (1962), 25 Ill. 2d 447, 449; accord 5 S. Symons, Pomeroy's Equity Jurisprudence §§ 368, 372 (5th ed. 1941); 8A J. Grimes, Thompson on Real Property § 4447 (1963).) Thus, Zografos reasoned, he became a *bona fide* purchaser because he took equitable title prior to receiving the June 1986 notice of Daniels' interest. The appellate court concluded that Zografos waived this theory. 252 Ill. App. 3d at 299.

Zografos repeats this theory before this court. We agree with the appellate court that Zografos did not assert this theory in any pleading, memorandum, argument, or post-trial motion in the trial court. Rather, Zografos raised this theory for the first time on appeal. "It has frequently been held that the theory upon which a case is tried in the lower court cannot be changed on review, and that an issue not presented to or considered by the trial court cannot be raised for the first time on review." *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147; accord *Bryant v. Lakeside Galleries, Inc.* (1949), 402 Ill. 466, 473-74.

Zografos attempts to avoid this prohibition. He argues that although he may not have used the label "equitable conversion," his presentation in the trial court encompassed the doctrine. He asserts that the parties addressed exhaustively the issue of when he received notice of Daniels' right of first refusal. He reasons that this was sufficient to preclude a finding of waiver. See, *e.g., Nassar v. Smith* (1974), 21 Ill. App. 3d 462, 467.

Zografos' attempt to avoid the waiver rule fails. Although the parties addressed the issue of when Zografos received notice of Daniels' right of first refusal, the doc-

trine of equitable conversion goes to when Zografos "owned" the Contiguous Parcel. The record shows that Zografos did *not* contend in the trial court that he *had already owned* the Contiguous Parcel prior to the June 1986 notice. Rather, he argued that the June 1986 notice, in the context of all of the circumstances, was insufficient to deny him the status of a *bona fide* purchaser.

Indeed, Zografos argued that, after receiving the June 1986 notice, he was prudent to proceed to close the transaction in August. He did *not* argue that the transaction *already occurred* in September 1985 when he entered into the contract. We agree with the appellate court that "Zografos' advancement of the [equitable conversion] doctrine constitutes a new theory of defense which he never raised below." 252 Ill. App. 3d at 299.

Moreover, as the appellate court reasoned, to permit Zografos to change his defense theory on review would not only weaken the adversarial process and our system of appellate jurisdiction, but may also prejudice Daniels. (252 Ill. App. 3d at 299.) Had Zografos raised the equitable conversion doctrine in the trial court, Daniels may have responded specifically to this theory with evidence and argument. Also, the trial court may have ruled on the equitable conversion theory, making findings concerning Zografos' knowledge of Daniels' interest not only in June 1986, but also in September 1985, when Zografos contracted to buy the Contiguous Parcel. (See *Kravis*, 60 Ill. 2d at 148-49.) We uphold the appellate court's finding that Zografos has waived application of the doctrine of equitable conversion.

We must next address, absent consideration of the equitable conversion doctrine, the issue of when during the executory stages of a real estate installment contract does the buyer become a *bona fide* purchaser. Zografos contends that, during this executory period, the buyer

can rely solely on the public records and ignore even actual notice of an outstanding, unrecorded interest.

This contention is erroneous. The legal principles are quite established. As we earlier noted, a *bona fide* purchaser, by definition, takes title to real property *without notice* of the interests of others. (*Kovacevic*, 47 Ill. App. 3d at 678.) A buyer who, prior to the payment of *any* consideration, receives notice of an outstanding interest pays the consideration at his or her peril with respect to the holder of the outstanding interest. Such a buyer is not protected as a *bona fide* purchaser and takes the property bound by the outstanding interest. (*Moshier v. Knox College* (1863), 32 Ill. 138, 143.) The law reasons that consummation of the purchase, after notice of the outstanding interest, is a fraud upon the holder of that interest. 8 J. Grimes, Thompson on Real Property § 4321, at 416-17 (1963).

Where a buyer receives notice of an outstanding interest subsequent to paying *some*, but prior to paying the full purchase price, authorities differ on whether the buyer is a *bona fide* purchaser. As the appellate court noted, some of the authorities state that partial payment of the consideration is insufficient to render the buyer a *bona fide* purchaser. 252 Ill. App. 3d at 300-02 (and authorities cited therein); 8 J. Grimes, Thompson on Real Property § 4322, at 418, 420-21 (1963).

However, a majority of jurisdictions have relaxed this harsh rule. Instead, they apply a *pro tanto* rule, which protects the buyer to the extent of the payments made prior to notice, but no further. (R. Cunningham, W. Stoebuck, D. Whitman, Property 795 (1984); 8 J. Grimes, Thompson on Real Property § 4322, at 418-19 (1963); 5 B. Jones, Tiffany on Real Property § 1305 (3d ed. 1939).) This court recognized this *pro tanto* rule in *dicta* in *Redden v. Miller* (1880), 95 Ill. 336, 346.

Courts have identified at least three methods to apply this *pro tanto* protection. First, the most common method is to award the land to the holder of the outstanding interest and award the buyer the payments that he or she made. The second method is to award the buyer a fractional interest in the land proportional to the amount paid prior to notice. The third method is to allow the buyer to complete the purchase, but to pay the remaining installments to the holder of the outstanding interest. (R. Cunningham, W. Stoebuck, D. Whitman, Property 795-96 (1984); 8 J. Grimes, Thompson on Real Property § 4322, at 418 (1963).) Courts exercise considerable latitude in these cases, taking into account the relative equities of the parties. R. Cunningham, W. Stoebuck, D. Whitman, Property 796 (1984); see, *e.g.*, 252 Ill. App. 3d at 302-04, explaining *Baldwin v. Sager* (1873), 70 Ill. 503.

In the present case, the trial court ordered Zografos to convey the Contiguous Parcel to Daniels and ordered Daniels to pay Zografos the full purchase price. The trial court also ordered Daniels to reimburse Zografos for the property taxes that Zografos had paid on the property. We agree with the appellate court that the trial court's disposition of this issue, between Daniels and Zografos, satisfied these well-settled principles of equity. (252 Ill. App. 3d at 305.) We cannot say that the trial court abused its discretion.

## II. Zografos' Easement

The trial court ordered Zografos to convey to Daniels not only the Contiguous Parcel, but also the easement in favor of the Contiguous Parcel that Zografos received from the Jaculas, covering all of the Second Parcel's strip. Zografos contends that Daniels' rights acquired under the 1977 contract's right of first refusal do not include Zografos' easement over the Second Parcel's strip. The appellate court upheld the order. 252 Ill. App. 3d at 305.

We agree with the appellate court. "Courts of equity possess broad, inherent and discretionary powers in the manner of granting relief." (*Quitman v. Dowd* (1939), 301 Ill. App. 403, 407.) In the present case, the trial court simply enforced the right of first refusal in Daniels' 1977 contract. The court ordered Zografos to convey to Daniels those rights that Zografos received from Jacula in August 1986. Those rights included not only the Contiguous Parcel itself, but also ingress to and egress from the Contiguous Parcel by way of the easement over the Second Parcel's strip. We cannot say that the trial court abused its discretion.

### III. Daniels' Driveway Easement

Zografos lastly assigns error to the appellate court's holding that Daniels was entitled to an easement based on the 1977 contract. The appellate court disagreed with the trial court's finding that the doctrine of merger barred Daniels' contractual easement rights.

We note Zografos' initial contention that the appellate court lacked jurisdiction to address the issue. Zografos points to the following facts. The trial court ruled against Daniels' contention that the 1977 contract granted him an easement and in favor of Zografos' affirmative defense of merger. Instead, the trial court granted Daniels an easement by prescription. Daniels, the putative appellant, never sought review of the issue of easement by contract and, Zografos claims, neither did he. Thus, Zografos reasons, since neither he nor Daniels sought review of this issue, the appellate court lacked jurisdiction to address it.

We disagree. The filing of a notice of appeal is jurisdictional. (134 Ill. 2d R. 301.) However, the notice is to be construed liberally. The purpose of a notice of appeal is to inform the prevailing party in the trial court that the unsuccessful litigant seeks review by a higher court. Legal briefs, not the notice of appeal itself, specify

the exact points relied upon for reversal. Accordingly, a notice of appeal is deemed sufficient to confer jurisdiction on the appellate court if the notice, considered as a whole, fairly and adequately sets out the judgment complained of and the relief sought, so that the successful litigant is advised of the nature of the appeal. *Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 433-34.

In the present case, we agree with the appellate court that Zografos' notice of appeal allowed the court to review the issue of easement by contract. As the appellate court observed, Zografos' notice of appeal directly requested that court to reverse that portion of the judgment denying him relief under his counterclaim. Further, Zografos' counterclaim sought declaratory and injunctive relief concerning Daniels' easement rights. We agree with the appellate court that the scope of Zografos' counterclaim was sufficiently broad to allow appellate review of the issue of easement by contract. 252 Ill. App. 3d at 308-09; see, *e.g.*, *Dillman & Associates, Inc. v. Capitol Leasing Co.* (1982), 110 Ill. App. 3d 335, 340.

Turning to the merits, Zografos argues that the doctrine of merger barred Daniels' 1977 contractual easement. Under the doctrine of merger by deed, if the terms of a real estate contract are fulfilled by delivery of the deed, the two instruments merge. Unless the deed contains a reservation, the deed supersedes all contract provisions and becomes the only binding instrument between the parties. However, where there are contract provisions which delivery of the deed does not fulfill, the contract remains in force until it has been fully performed. (*Chicago Title & Trust Co. v. Wabash-Randolph Corp.* (1943), 384 Ill. 78, 87; *Trapp v. Gordon* (1937), 366 Ill. 102, 110; *Harris Trust & Savings Bank v. Chicago Title & Trust Co.* (1980), 84 Ill. App. 3d 280, 283.) The

creation of an easement in a contract is such a separate and independent provision which, if not referred to in the deed, is not fulfilled by delivery of the deed and remains in force until performed. *Trapp*, 366 Ill. 102; *Shelby v. Chicago & Eastern Illinois R.R. Co.* (1892), 143 Ill. 385; see *Harris*, 84 Ill. App. 3d at 285.

Whether and to what extent the contract merges into the deed is a matter of the parties' intent that the deed constitutes a full performance of the contract. This intent is evidenced by the language of the instruments and the surrounding circumstances. *Trapp*, 366 Ill. at 111.

After carefully reviewing the record, we agree with the appellate court that the merger doctrine does not bar enforcement of the 1977 contract. The deed to the Daniels Property does not mention the 1977 contractual easement. Thus, it remains in force.

Further, this result is evidenced by the 1977 contract language and surrounding circumstances. We previously quoted from the pertinent provision of the 1977 contract. It plainly: (1) establishes the Second Parcel's strip to provide the Second Parcel with access to 79th Street; and (2) grants Daniels an easement over that portion of the strip contiguous to the Daniels Property. The gravel driveway, which lies on a small portion of the strip, has always served as the ingress to and egress from the residence on the Daniels Property. The clear intent of the parties was simply to grant Daniels the right to use the existing driveway to access 79th Street. These facts also refute Zografos' meritless argument that the 1977 contract established the easement not for the benefit of the Daniels Property, but rather for the Second Parcel.

Zografos lastly assigns error to the appellate court's award to Daniels of "a contractual easement, nonexclusive in nature, to run with the Daniels Property, for ingress and egress purposes, over the 60-foot strip of the

Second Parcel." (252 Ill. App. 3d at 310.) Zografos argues that this award exceeds the terms of the 1977 contract.

We agree. As we previously quoted, the 1977 contract grants Daniels "a non-exclusive easement, to run with the land for ingress and egress over that portion of such [60] foot strip contiguous to this parcel." Accordingly, we modify the judgment of the appellate court (134 Ill. 2d R. 366(a)(5)) to award Daniels a contractual easement, nonexclusive in nature, to run with the Daniels Property, for ingress and egress purposes, over *that portion of* the 60-foot strip of the Second Parcel *contiguous to the Daniels Property.*

"The general aim of a court should be to grant equitable relief of such a nature as will best accomplish the ends of justice." (*Wolf v. Lawrence* (1916), 276 Ill. 11, 21.) After carefully reviewing the entire record, we conclude that justice was accomplished in the present case.

For the foregoing reasons, the judgment of the appellate court is affirmed as modified.

*Affirmed, as modified.*

APPENDIX
(Distances rounded to nearest foot.)